[Cite as *State ex rel. Knedler v. Indus. Comm.*, 2013-Ohio-5537.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Charles W. Knedler, | : | |
| Relator, | : | |
| | : | No. 12AP-804 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio, | : | |
| and Department of Rehabilitation and Correction - Pickaway Correctional Institute, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 17, 2013

*Copp Law Offices,* and *Shawn M. Wollam,* for relator.

*Michael DeWine,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Isaac, Wiles, Burkholder & Teetor, LLC,* and *J. Miles Gibson,* for respondent Department of Rehabilitation & Correction - Pickaway.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

T. BRYANT, J.

{¶1} Relator, Charles W. Knedler, filed an original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its July 13, 2010 order that exercised continuing jurisdiction over a January 13, 2010 order of its staff hearing officer ("SHO") awarding relator permanent total disability ("PTD") compensation starting November 12, 2008, and to enter an order

reinstating the January 13, 2010 SHO's order.  Alternatively, relator requested that the writ order the commission to vacate the portion of its July 13, 2010 order that determined relator is unable to perform sustained remunerative employment and to conduct a new hearing on the merits of the PTD application because one of the commissioners was absent from the July 13, 2010 hearing.

## I.  BACKGROUND

{¶2}    Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate.  The magistrate issued detailed findings of fact and conclusions of law which is appended to this decision.  (Attached as an Appendix).

{¶3}    Relator and respondents, the commission and the Department of Rehabilitation and Correction ("ODRC"), all filed objections to the magistrate's decision.  The case is now before the court for a full, independent review.  For ease of discussion, we provide a brief recitation of the relevant facts to this decision.

{¶4}    Relator has two industrial claims arising from his employment with ODRC.  After an SHO granted relator's request for PTD compensation, the employer requested the commission reconsider of the SHO's order contending that the SHO relied on Dr. Manuel's November 12, 2008 and January 14, 2009 reports, but the doctor's January 7, 2009 office notes were inconsistent with those reports.

{¶5}    After reconsideration was requested, relator's doctor, Dr. Manuel, sent the commission a letter dated June 29, 2010 stating that the activity restrictions as discussed in his November 12, 2008 report are accurate and his office notes of January 7, 2009 constituted a continuation of outdated activity restrictions and did not reflect the changes made on November 12, 2008.  The error was not noted until relator had a follow-up office visit on March 4, 2009, and the activity restrictions were corrected.  The commission excluded the doctor's note finding it was untimely filed.

{¶6}    The commission held a hearing with only two commissioners present.  The commission vacated the SHO's order and denied relator's application for PTD compensation.  The absent commissioner wrote on the commission order that he had discussed the matter with an SHO who had been present during the hearing, and the SHO summarized the testimony, evidence and arguments presented at the hearing.

After the discussion and a review of all the evidence in the claim file, the absent commissioner voted to grant continuing jurisdiction and deny the PTD application.

{¶7}    Subsequently, the commission mailed an order declaring an overpayment of PTD compensation and indicated that the overpayment would be collected as a percentage of future awards.  On administrative appeal, an SHO issued an order finding that relator received the compensation benefits in good faith and no fraud was involved.  The SHO determined that since R.C. 4123.511 provides for recollection according to the method set forth in R.C. 4123.511(K) only after final administrative determination of an appeal, and does not provide for reconsideration, the overpayment should be charged to the statutory surplus fund.

{¶8}    The administrator of the bureau and the employer filed appeals/requests for reconsideration.  Relator filed a motion to dismiss the appeals.  The commission exercised continuing jurisdiction and found a mistake of law and error by a subordinate hearing officer by charging the overpayment to the surplus fund.  After a hearing, the commission found the SHO erred when he ordered a reimbursement of the overpayment from the surplus fund.  The commission vacated the SHO order and ordered the overpayment to be collected from relator pursuant to R.C. 4123.511(K).  Relator then filed this original action seeking a writ of mandamus.

{¶9}    The matter was referred to a magistrate who found that the commission had continuing jurisdiction and the vote of the commissioner who was absent from the hearing deprived relator of due process of law with respect to that portion of the commission's order that determined on the merits relator's application for PTD compensation.  However, the magistrate decided that the missing commissioner did not violate relator's due process rights regarding the commission's determination that the SHO order contained a clear mistake of law because the determination of a clear mistake of law did not rest upon witness credibility at the hearing.  The magistrate decided the court should issue a writ of mandamus ordering further administrative proceedings to redetermine the merits of relator's application for PTD and the issue of overpayment.

## II. OBJECTIONS

{¶10} Relator filed the following four objections to the magistrate's decision:

I. RELATOR OBJECTS TO THE MAGISTRATE'S CONCLUSION THAT THE COMMISSION PROPERLY EXERCISED CONTINUING JURISDICTION OVER THE FINAL ORDER DATED JANUARY 13, 2010 WHICH AWARDED PTD COMPENSATION. RELATOR SUBMITS THAT THE COMMISSION'S RECONSIDERATION ORDER CONSTITUTES AN ABUSE OF DISCRETION, EXCEEDS ITS JURISDICTION, IS CONTRARY TO LAW, SHOULD BE VACATED, AND THE FINAL ORDER AWARDING PTD SHOULD BE ORDERED REINSTATED.

I-A. A PHYSICIAN'S ASSESSMENT OF SOME RESIDUAL FUNCTIONAL CAPACITY IS NOT NECESSARILY "INCOSISTENT" WITH A FINDING OF PTD WHERE THE PHYSICIAN SPECIFICALLY EXPLAINS THAT OTHER INJURY RELATED INDICIA OF DISABILITY IS PRESENT AND SUCH REASONING IS DEEMED PERSUASIVE BY THE SHO.

I-B. (1) AN ERROR OF LAW IS NOT PRESENT WHEN "A*N INCONSISTENT MEDICAL CONCLUSION CAN BE ATTRIBUTED TO MISTAKE, AS COMPARED TO LACK OF KNOWLEDGE, AND ...OTHER MEDICAL EVIDENCE EXISTS FROM WHICH THE ...[SHO]...COULD CONCLUDE THE MISTAKE WAS RESOLVED*" *State ex rel. Chrysler Corp. v. Indus. Comm.*, 81 Ohio St.3d 158 (1998).

(2) DISAGREEMENT ON THE INTERPRETATION OF MEDICAL EVIDENCE IS NOT A CLEAR MISTAKE OF LAW; THE COMMISSION LACKS CONTINUING JURISDICTION TO STRIKE EVIDENCE FROM CONSIDERATION AS A MISTAKE OF LAW AND ABUSES ITS DISCRETION BY REWEIGHING MEDICAL, NEGLECTING CONTEMPORANEOUS CORRECTIONS IN THE RECORD, AND SUBSTITUTING ITS JUDGEMENT FOR THAT OF THE SHO.

II. RELATOR OBJECTS TO THE MAGISTRATE'S CONCLUSION THAT THE INDUSTRIAL COMMISSION DID NOT ABUSE ITS DISCRETION AND ERR AS A MATTER OF LAW WHEN IT REFUSED TO CONSIDER DR. MANUEL'S JUNE 29, 2010 STATEMENT.

III. RELATOR OBJECTS TO THE MAGISTRATE'S CONCLUSION OF LAW CONCERNING "*THE ABSENT COMMISSIONER*" COMMENCING AT PAGE 22 OF HIS DECISION: RELATOR SUBMITS THAT WHEN THE COMMISSION HEARS A CONTINUING JURISDICTION RECONSIDERATION REQUEST FROM A FINAL ORDER, IT ABUSES ITS DISCRETION AND VIOLATES DUE PROCESS PROTECTIONS WHEN A MEMBER CASTS THE DECIDING VOTE "...*IN SPITE OF THE FACT THAT SHE [OR HE] DID NOT ATTEND THE HEARING.*" *STATE EX REL. EVERT V. INDUS. COMM.*, 10TH DIST. NO. 11AP-465, 2012-OHIO-2402 ¶ 33, *APPROVED, EXPLAINED AND FOLLOWED.*

IV. RELATOR OBJECTS TO THE MAGISTRATE'S RESOLUTION OF THE COMMISSION'S OVERPAYMENT ORDER BECAUSE THE ORDER IS AN ABUSE OF DISCRETION, CLEARLY CONTRARY TO LAW AND MISCALCULATED; THE MAGISTRATE VACATES THE ORDER IN FAVOR OF FURTHER PROCEEDINGS EVEN THOUGH THE COMMISSION LACKS JURISDICTION, IS ALREADY RECOUPING THE OVERPAYMENT AND THE SHO'S DETERMINATION OF THIS ISSUE IS LEGALLY AND FACTUALLY CORRECT.

{¶11} The commission filed the following two objections to the magistrate's decision:

[1.] [T]he commission objects to the magistrate's finding that the non-attending commissioner's vote violated due process of law

[2.] [The commission objects to] the magistrate's finding that the commission must vacate the overpayment orders.

{¶12} ODRC filed an objection to the magistrate's decision requesting "this Court to expand its ruling and allow for an absent Commissioner to vote after a review of the case with a Hearing Officer present where credibility [of the] witness is not an issue."

## III. DISCUSSION

{¶13} After the briefs were filed in this court, the Supreme Court of Ohio decided *State ex rel. Sigler v. Lubrizol Corp.*, 136 Ohio St.3d 298, 2013-Ohio-3686, which determines three of the objections raised in this case. In their objections, relator, the commission and ODRC all raised the issue of whether the magistrate erred in finding

that relator's due process rights were violated when the commission held a hearing with only two members present and the third commissioner voted later. Relator's contention was the magistrate erred in finding that his due process rights were not violated when the commission determined that the SHO order contained a clear mistake of law and vacated the SHO's final order.

{¶14} In *Sigler*, the Supreme Court of Ohio determined that Sigler failed to demonstrate that the commission's voting procedure violated due process. Sigler had applied for PTD compensation and an SHO approved the award. This court ordered the commission to reconsider Sigler's application and after another hearing, an SHO again awarded Sigler PTD compensation. The employer filed a motion for reconsideration. After a hearing with only two commissioners present, the commission granted the motion for reconsideration to correct a clear mistake of law, vacated the award and denied Sigler's application.

{¶15} The Supreme Court of Ohio reiterated that a commissioner is not required to attend a PTD hearing in order to participate in the decision, citing *State ex rel. Dayton Walther Corp. v. Indus. Comm.*, 71 Ohio St.3d 105, 107 (1994). The absent commissioner may review a transcript of the hearing, but that is not the only method of review, however, the commissioner's failure to consider any evidence from the hearing violates the claimant's due process rights. *State ex rel. Youghiogheny & Ohio Coal Co. v. Indus. Comm.*, 65 Ohio St.3d 351 (1992); *State ex rel. Ormet Corp. v. Indus. Comm.*, 54 Ohio St.3d 102, 107 (1990). The Supreme Court then reviewed the *Ormet* decision in which they held that the decision maker must "*in some meaningful manner*, consider and appraise all the evidence to justify the decision." (Emphasis sic.) *Sigler* at ¶ 15. The court had approved the use of subordinates to analyze the evidence and prepare a summary or the absent commissioner could listen to an audiotape of the hearing and review a summary prepared by a legal advisor and discuss with the other commissioners. *See Ormet*; *State ex rel. Ohio Bell Tel. Co. v. Indus. Comm.*, 68 Ohio St.3d 329 (1994).

{¶16} After reviewing its previous decisions, the court held that when the absent commissioner reviewed the claim file and talked with a longtime commission hearing officer who summarized the testimony, evidence and arguments for him, and referenced his handwritten notes, there was no violation of due process rights.

{¶17} In this case, the absent commissioner noted on the order that:

On 08/04/2010, I discussed this matter with Cindy Albrecht who was present at the 07/13/2010 hearing. Ms. Albrecht summarized the testimony, evidence and arguments presented at the hearing. After this discussion and a review of all the evidence contained within the claim file, I vote to grant continuing jurisdiction and deny the IC-2, Application for Permanent Total Disability Compensation, filed 01/22/2009.

{¶18} Given that the absent commissioner reviewed all the evidence and received an oral summary of the testimony, evidence and arguments presented at the hearing, there is compliance with the *Sigler* and *Ormet* standard of considering the evidence in a meaningful manner and relator has not demonstrated a violation of his due process rights. Relator's third objection and the commission's first objection and ODRC's objection are overruled.

{¶19} Relator also objects to the magistrate's decision regarding his conclusion that the commission properly exercised continuing jurisdiction over the January 13, 2010 order which awarded PTD compensation. The magistrate determined that the November 12, 2008 and January 14, 2009 reports of Dr. Manuel are not some evidence upon which the SHO could rely to support the PTD award and such reliance upon those reports was a clear mistake of law that provided the prerequisite for the commission's exercise of continuing jurisdiction.

{¶20} SHOs are granted original jurisdiction to hear and decide applications for PTD compensation. R.C. 4121.34(B)(1). There is no right to administratively appeal a decision of an SHO awarding PTD compensation, thus the decision was a final order. R.C. 4123.511(D) and (E). "The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52." *State ex rel. Gobich v. Indus. Comm.,* 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14, citing *State ex rel. Royal v. Indus. Comm.,* 95 Ohio St.3d 97, 99 (2002). However, this power is not unlimited and continuing jurisdiction can only be invoked when one of the following requirements has been met: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *Gobich* at ¶ 14, citing *State ex rel. Nicholls v. Indus. Comm.,* 81 Ohio St.3d 454, 459 (1998).

{¶21} Here, the magistrate found that the January 7, 2009 office notes by Dr. Manuel were not inconsistent with the November 12, 2008 report because they were based upon different examinations. The January 7, 2009 office notes constituted new and changed circumstance following the issuance of the November 12, 2008 report because the January 7, 2009 office notes suggest a very different picture of relator's work status. The magistrate concluded that reliance on the November 12, 2008 and the January 14, 2009 reports was a clear mistake of law by the SHO.

{¶22} The magistrate correctly concluded that the January 7, 2009 office notes constitute new and changed circumstances. The January 7, 2009 office notes reflect an examination on that date and the relator's work status is different in January 2009 than it was in November 2008. *State ex rel. Conrad v. Indus. Comm.*, 88 Ohio St.3d 413 (2000). The SHO was not entitled to rely on the November 2008 report and ignore the January 7, 2009 office notes. However, the magistrate did not discuss the January 14, 2009 report which reaches the same conclusion as the November 2008 report, but is different than the January 7, 2009 office notes. "[C]ontradictory or equivocal statements by the same physician cannot, as a matter of law, support an award of compensation. * * * Further, equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *State ex rel. Eberhardt v. Flexible Corp.*, 70 Ohio St.3d 649, 656-57 (1994). Dr. Manuel's conflicting reports create uncertainty and cannot constitute evidence upon which the commission may grant relator's application for PTD compensation and reliance on those reports was a clear mistake of law and the commission could properly exercise continuing jurisdiction.

{¶23} Relator further argues that Dr. Manuel's November 12, 2008 and January 14, 2009 reports were not simply based upon relator's diminished physical strength alone, but also on other injury induced indicia of PTD. Relator contends the magistrate only focused on the diminished physical strength and did not address the rest of Dr. Manuel's findings. However, the January 7, 2009 office notes do not agree with the November 12, 2008 and January 14, 2009 reports in more ways than the diminished physical strength. The January 7, 2009 office notes provide, as follows:

> The patient presents today for re-evaluation. The patient['s]
> pain is actually only a 2.5 on a scale of 10 [and] has

significantly decreased from previous pain patterns. The patient with significant improvement with the change to Kadian from the Avinza. Patient getting much better sleep. The patient has just initiated an exercise program to start losing weight. The patient after his first attempt at the exercise program woke up stiff, but still without having significant increase in the amount of pain. The patient is using his TENS unit along with his medications. The patient is currently not working. The patient is able [to] stay within his activity restrictions on a daily basis. No other acute complaints.

{¶24} In his November 12, 2008 letter, which is referenced in the January 14, 2009 report, Dr. Manual stated that, "Mr. Knedler's current work abilities are significantly lessened due completely to his activity intolerance and pain management intervention issues. * * * With regard to subjective complaints, Mr. Knedler experiences continued numbness of both lower extremities on a daily basis. He also maintains a constant pain level of 5 to 10 in his low back with radiation down his both legs (left>right) (with medication on board) that increases frequently depending upon his chosen level of physical activity. * * * Unfortunately, Mr. Knedler requires benefit of the medications around the clock in order to tolerate even his present sedentary daily activity." Even considering his pain and medication, there was a change between November and January—his pain decreased from a 5-10 to a 2.5 out of 10 and his complaints improved with a change in medication. These reports create uncertainty in relying on them and do not constitute evidence which can be relied upon. Thus, relator's first objection is overruled.

{¶25} Relator argues that Dr. Manuel's office notes and reports are ambiguous statements which he clarified in his letter to the commission on June 29, 2010. Relator objects to the magistrate's decision where he found that the commission did not abuse its discretion when it refused to consider this letter. In *Eberhardt*, the court stated that:

"[A]mbiguous statements are inherently different from those that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reveal that the doctor is not sure when he means and, therefore, they are inherently unreliable. Such statements relate to the doctor's position on a critical issue. Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he

> meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position but to his communication skills."

*Id.* at 657.

{¶26} The commission found that Dr. Manuel's June 29, 2010 report was untimely submitted. The commission has the discretion to accept or reject evidence submitted after the hearing. *State ex rel. Cordray v. Indus. Comm.*, 54 Ohio St.3d 99, 101 (1990); *State ex rel. Schlegel v. Stykemain Pontiac Buick GMC, Ltd.*, 120 Ohio St.3d 43, 2008-Ohio-5303, ¶ 16. Dr. Manuel's June 29, 2010 letter does not clarify his January 7, 2009 office notes but attempts to explain why the office notes should not be considered at all. Thus, the commission did not abuse its discretion in refusing to admit and consider Dr. Manuel's June 29, 2010 letter. Relator's second objection is overruled.

{¶27} Finally, in his last objection, relator argues that the commission's order regarding overpayment is an abuse of discretion and the SHO's determination was actually legally and factually correct. The magistrate did not determine this issue because he decided that the commission should conduct further proceedings. Relator contends that R.C. 4123.511(K) is not applicable to PTD benefits ordered paid following a final R.C. 4123.35(B)(1) order in the absence of a finding of fraud because R.C. 4123.511 overpayment authority is limited to appeals. In this case, there was no appeal from a PTD order; the overpayment resulted from the commission exercising continuing jurisdiction. Thus, relator contends that any overpayment cannot be recouped from relator.

{¶28} "Claimants are entitled to receive the compensation due them but are not entitled to receive a windfall when they are paid money to which they are not entitled." *State ex rel. Murphy v. Indus. Comm.*, 10th Dist. App. No. 05AP-275, 2006-Ohio-1480, ¶ 26. In *State ex rel. Wooten v. Indus. Comm.*, 104 Ohio St.3d 186, 2004-Ohio-6505, the Supreme Court of Ohio determined the issue on similar facts. In *Wooten*, the claimant was awarded PTD compensation. The employer filed a complaint in mandamus and this court issued a limited writ that returned the cause to the commission for further consideration finding that the commission did not adequately explain its decision as required by *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). Upon reconsideration, the commission determined that claimant was not

entitled to PTD compensation. Claimant did not appeal. The Bureau of Workers' Compensation then determined that claimant had been overpaid and the amount was to be repaid consistent with R.C. 4123.511(J). Claimant appealed, this court affirmed the commission's order and the Supreme Court also affirmed. The Supreme Court distinguished cases where the compensation was terminated after discovering payment had been initiated or continued as the result of a bona fide mistake. When the compensation was stopped because the order awarding it was reversed on administrative reconsideration, R.C. 4123.511(K) was applicable.

{¶29} Following the Supreme Court precedent, we find the commission did not err in its November 8, 2010 order declaring an overpayment ($39,537.90) and ordering recovery pursuant to R.C. 4123.511. Relator's fourth objection is overruled.

{¶30} The commission also objected to the magistrate's decision arguing that the magistrate erred in finding that the commission must vacate the overpayment orders. Based on our ruling on the objections regarding the absent commissioner and relator's objection regarding the overpayment order, this objection is sustained.

## IV. CONCLUSION

{¶31} In conclusion, after review of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of all the objections, we find that the magistrate has properly determined the pertinent facts, and adopt them as our own. Relator's four objections are overruled, the commission's objections are sustained and ODRC's objection is sustained. For the reasons set forth in this decision, however, we do not adopt the magistrate's conclusions of law and deny the requested writ of mandamus.

*Objections sustained in part and overruled in part;*
*writ of mandamus denied.*

DORRIAN and O'GRADY, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).

––––––––––

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Charles W. Knedler, | : | |
| Relator, | : | |
| | : | No. 12AP-804 |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio, and Department of Rehabilitation and Correction - Pickaway Correctional Institute, | : | |
| | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

### MAGISTRATE'S DECISION

**Rendered on July 16, 2013**

---

*Copp Law Offices,* and *Shawn M. Wollam,* for relator.

*Michael DeWine,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Wiles Boyle Burkholder & Bringardner,* and *J. Miles Gibson,* for respondent Department of Rehabilitation & Correction - Pickaway.

---

### IN MANDAMUS

{¶32} In this original action, relator, Charles W. Knedler, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its July 13, 2010 order that exercised continuing jurisdiction over a January 13, 2010 order of its staff hearing officer ("SHO") awarding relator permanent total disability ("PTD") compensation starting November 12, 2008, and to enter an order

reinstating the January 13, 2010 SHO's order. In the alternative, because one of the commissioners was absent from the July 13, 2010 hearing, relator requests that the writ order the commission to vacate that portion of its July 13, 2010 order that determined that relator is able to perform sustained remunerative employment, and to conduct a new hearing on the merits of the PTD application at which all three commissioners are present.

<u>Findings of Fact</u>:

{¶33} 1. Relator has two industrial claims arising from his employment with respondent Ohio Department of Rehabilitation and Correction ("ODRC") at the Pickaway Correctional Institution ("PCI") as a farm coordinator/corrections officer.

{¶34} 2. On June 1, 2003, a cow kicked relator in the arm. The industrial claim (No. 03-367229) is allowed for: "sprain left elbow/forearm; hyperextension of arm."

{¶35} 3. On March 17, 2005, relator slipped on cow manure and fell, injuring his back and shoulder. The industrial claim (No. 05-325083) is allowed for:

> Sprain thoracic region; contusion of back; sprain sacroiliac; sprain right shoulder; sacral coccygeal contusion; lumbosacral sprain/strain; L5-S1 herniated disc; post lumbar laminectomy syndrome; thoracic neuritis; lumbosacral neuritis; thoracic radiculitis; lumbosacral radiculitis; aggravation of pre-existing major depression.

{¶36} 4. In June 2005, relator underwent a left L5-S1 laminectomy with discectomy. The surgery was performed by Mark Hnilica, M.D.

{¶37} 5. In October 2006, Dr. Hnilica performed an L3-4, L4-5, L5-S1 laminectomy and medial facetectomy and foraminotomies with intervertebral cage.

{¶38} 6. On March 18, 2008, relator was examined by attending physician Timothy Manuel, M.D., who practiced at the Fayette County Memorial Hospital. Dr. Manuel's office note of that date states:

> **HISTORY:** Patient presents today pain is a 4 to 5/10 in the low back area continuous. Does have radiation down into both legs. Patient has added a TENS unit to the treatment plan and using it during the daytime noting some mild modulation of the pain. Is still working on where the patches go and which type patches are going to be most effective for him. Patient is using Lidoderm patch at night also with mild relief. Patient is using Vicodin, stating it just takes the edge off. He is using Lyrica three times a day and Flexeril at

bedtime and finding that it brings the pain down to a tolerable level. Patient is having some shoulder stiffness at this time. Patient is having a difficult time sleeping on the right side because of the shoulder stiffness. Patient has not developed any new radicular symptoms, or other acute complaints.

\* \* \*

**TREATMENT PLAN:** Treatment plan at this time, will change the patient's narcotic management at this time from the pulse management with the Vicodin and switch to Avinza which is for long continuous pain relief with the 24-hour release medication. Otherwise, we will keep the patient's medications as they have been. This patient is getting fairly good management with this. Patient at this time is over a year out from his last surgery. Therefore, we will obtain a functional capacity exam to see exactly what the patient's work capabilities are at this time and will also request vocational rehabilitation to help us with returning patient back to the work force. No other changes in the patient's treatment plan at this time.

{¶39} 7. On November 12, 2008, at relator's request, Dr. Manuel wrote a two-page letter or report stating:

RE: Long term treatment/activity plan for Charles W. Knedler
BWC Claim # 05-325083
Date of Injury: 3-17-05

Dear Mr. Knedler:

I am in receipt of your request for insight into a projected long-term treatment plan taking into consideration the nature and severity of physical impairment for injured worker Charles W. Knedler, as it pertains to his BWC injury as referenced above. At your request I have reviewed Mr. Knedler's chart and have found the following to be true:

1) Mr. Knedler has been treated throughout the majority of his injury history by myself and his neurosurgeon Dr. Mark Hnilica (along with other pain management physicians) for the following diagnoses: 847.1 Thoracic Sprain/Strain; 922.31 Contusion [sic] Back; 846.1 Sacroiliac Sprain/Strain; 922.32 Buttock Contusion; 840.9 Right Shoulder Sprain/Strain; 846.0 Lumbosacral Sprain/Strain; 722.83

Post Laminectomy Syndrome (Lumbar); 724.4 Lumbosacral Neuritis; 724.4 Lumbosacral Radiculitis; 722.10 HNP L5-S1; 724.4 Thoracic Sprain/Strain and 724.4 Thoracic Radiculitis.

2) During the treatment period referenced above, Mr. Knedler has undergone a laminectomy/discectomy dated 6-23-05, a fusion/cage dated 10-12-06 (for failed laminectomy), and epidural steroid injections. Mr. Knedler has also participated in physical therapy treatment plans, numerous prescription medication treatment plans and currently utilizes a TENS unit for added pain management.

Having completed this aggressive intervention and treatment plan, Mr. Knedler remains without significant improvement of his ability to perform his usual daily activities. Mr. Knedler's physical abilities related to what he would be able to perform in an eight-hour work day are considerably less than what is generally determined to be a sedentary level of duty. I realize that Mr. Knedler's previous Functional Capacity Examination (FCE) rates his abilities at the moderate work level; however Mr. Knedler's current work abilities are significantly lessened due completely to his activity intolerance and pain management intervention issues. The rationale behind this is twofold. Mr. Knedler's objective physical findings post-surgery include:

1) a slow deliberate ataxic, antalgic gait;
2) unable to stand for any significant period of time with limited ambulation for very short periods of time (patient requires frequent position changes secondary to constant pain);
3) radicular pain of both lower extremities with the left leg greater than the right.

With regard to subjective complaints, Mr. Knedler experiences continued numbness of both lower extremities on a daily basis. He also maintains a constant pain level of 5 of 10 in his low back with radiation down his both legs (left>right) (with medication on board) that increases frequently depending upon his chosen level of physical activity. This continued level of pain even at rest, along with the fact that his only remaining avenue of pain relief available has been (and will continue to be) only moderately successful, in the form of narcotic analgesics and neuropathic pain management medications that both can be moderately to heavily sedating as well as utilization of TENS unit for a limited period of the day. Unfortunately Mr.

Knedler requires benefit of the medications around the clock in order to tolerate even his present sedentary daily activity. The constant presence of these medications on board severely limits Mr. Knedler's ability to participate in any activity requiring prolonged periods of mental and physical alertness, as he requires intermittent periods of rest throughout the course of a day in order to overcome the sedative effects of the medication.

Taking into consideration all of the above information, it is with a reasonable degree of medical probability that I feel that Mr. Knedler is not capable of performing even up to a sedentary level of employment on any kind of routine schedule. I certainly believe that this restriction will remain in place in the extended future as well, as Mr. Knedler has reached Maximum Medical Improvement for this injury as of 6-3-08; meaning all possible avenues of intervention and treatment having been utilized previously with limited to no success, leaving continued narcotic prescription medication therapy as the only remaining avenue of pain management available to Mr. Knedler.

{¶40} 8. On January 7, 2009, relator was examined by Dr. Manuel. The office note states:

HISTORY: The patient presents today for re-evaluation. The patient['s] pain is actually only a 2.5 on a scale of 10 [and] has significantly decreased from previous pain patterns. The patient with significant improvement with the change to Kadian from the Avinza. Patient getting much better sleep. The patient has just initiated an exercise program to start losing weight. The patient after his first attempt at the exercise program woke up stiff, but still without having significant increase in the amount of pain. The patient is using his TENS unit along with his medications. The patient is currently not working. The patient is able [to] stay within his activity restrictions on a daily basis. No other acute complaints.

* * *

TREATMENT PLAN: At this time the change to the narcotic with Kadian has done very well for the patient. We will continue the patient's activity restrictions. The patient treatment considerations as recommended by Dr. Bhattacharya was for possibility of an implanted electric stimulator. At this time, the patient would like to still

consider that but does not wish to go to that option this month. The patient [sic] otherwise the recommendations by Dr. Bhattacharya will continue to reference as the patient proceeds through the treatment plan. Patient at this time biggest hurdle is going to be the weight loss program but now the patient's decreased pain he does feel that he can increase his activity and may be able to start dropping weight and increasing his strength and flexibility. We will continue to encourage the patient as he goes through that.

**ACTIVITY RESTRICTIONS:** Lifting, pushing, and pulling of 50 pounds maximum. Only occasional over the shoulder work and only occasional kneeling and squatting. Continue to use the TENS unit. Prescriptions for Flexeril, Lyrica Vicodin and Kadian.

{¶41} 9. On January 14, 2009, Dr. Manuel completed a preprinted form captioned "Physician's Report for Industrial Commission of Ohio." Presumably, the form was prepared by relator's counsel. The form states:

RE: Charles Knedler
BWC Claim Number: 05-325083
Date of Injury: 3-17-05
D.O.B.: 9-23-78

Allowed Conditions: 847.0 Sprain Thoracic Region; 922.31 Contusion of Back; 846.1 Sprain sacroiliac; 922.32 Contusion of buttock; 840.9 Sprain right shoulder and arm; 846.0 Sprain lumbosacral; 722.10 L5-S1 herniated disc; 722.83 Post lumbar laminectomy syndrome; 724.4 Thoracic neuritis; 724.4 Lumbosacral neuritis; 724.4 Thoracic radiculitis; 724.4 Lumbosacral radiculitis[.]

"Based on the allowed conditions in this industrial claim, only, it is my opinion that the claimant, Charles Knedler, is (or) is not (circle one) permanently and totally disabled from employment."

{¶42} On the form, Dr. Manuel circled the word "is" to indicate that relator is permanently and totally disabled. In the space provided, Dr. Manuel wrote: "Again see letter from 11/12/08."

{¶43} 10. On March 4, 2009, relator was again examined by Dr. Manuel. The office note states:

**HISTORY:** The patient presents today for re-evaluation. The patient's pain is only a 3 on a scale of 10. The patient does get radiation into the hips and lateral legs, especially when he is out walking, more of a numbness than a true pain. The patient's pain has been much better controlled on the new combination of medicines with the Kadian twice a day, Lyrica three times a day, and utilizing Flexeril at bedtime. The patient does occasionally use a Vicodin for days with worse pain, but overall the pain has been much better controlled with this current combination of medications.

* * *

**TREATMENT PLAN:** At this time, the patient is doing much better with the current medications. We will continue these medications. The patient still with these medications is unable to work even a sedentary position, therefore, the patient will need to remain off work.

{¶44} 11. Earlier, on January 22, 2009, relator filed an application for PTD compensation. In support, relator submitted the November 12, 2008 and January 14, 2009 reports of Dr. Manuel.

{¶45} 12. On February 10, 2009, at the employer's request, relator was examined by Kelly E. Lindsay, M.D. Dr. Lindsay examined for all of the allowed physical conditions of the two industrial claims. In her eight-page narrative report, Dr. Lindsay opines:

This gentleman would be capable of performing remunerative employment if it was sedentary. He has a sitting tolerance of 1 to 1-1/2 hours, standing tolerance of 20-25 minutes and walking tolerance of 15-20 minutes. As long as Mr. Knedler is at a sedentary job with the ability to change positions frequently, he would be able to perform some sort of remunerative employment. He would not be able to kneel, twist, turn, bend, lift to his chest or over his head. He would be able to perform tactile work in front of him. If he is seated, which he should be for the majority of his potential work, he would need to be in a supportive ergonomic chair.

* * *

In my medical opinion, this gentleman is not permanently and totally disabled form any work. He would not be able to return to his former position of employment but he would be

> able to perform sedentary type of work. His restrictions would be as I stated above.

{¶46} 13. At the employer's request, vocational specialist Brett J. Heath, CVE, CDMS, issued a ten-page "Employability Assessment Report," dated March 4, 2009.

{¶47} 14. On April 1, 2009, relator was again examined by Dr. Manuel. The office note expresses disagreement with the February 10, 2009 report of Dr. Lindsay without specifically identifying Dr. Lindsay's report:

> **HISTORY:** The patient presents today for scheduled reevaluation. <u>The patient's pain is a 4 to 5 on a scale of 10. The patient's pain is primary in the lumbar spine area, radiating into both legs.</u> The patient does have <u>more increased pain when he first wakes up in the morning at 6-1/2 on a scale of 10,</u> but, as he becomes active, the pain does decrease somewhat. The patient is sleeping much better now that he has been switched to the Kadian twice a day. Patient's medications with Kadian, Flexeril, and Lyrica through the day with Vicodin at night to help, the patient has been doing better with his pain. The patient had used the TENS unit to try and see if that helped modulate the pain and used it for two weeks and found that it gave him no benefit. <u>The patient has had a recent independent medical examination done in reference to his permanent disability and that is discussed below.</u> The patient has no other acute complaints.
>
> * * *
>
> **TREAMENT PLAN:** At this time, patient will continue the medication that he has been on as recommended by the pain specialist. Although the <u>patient's pain is only brought down to a 5 at best during the day</u>, this is still an improvement. The patient's TENS unit did not end up benefiting the patient and will drop that from the patient's treatment. The patient did have an independent medical examination for determination of permanent total disability. I do disagree somewhat with the findings of the examiner; the examiner finding that the patient would be able to work in a sedentary environment, but with a sitting tolerance of less than an hour, with a standing tolerance of 20 minutes, walking tolerance of only 15 minutes, and to get to that point, the patient requiring fairly heavy narcotics to be able to get to that point would make it dangerous for the patient to be able to drive himself to and from to be able to work underneath these medications with very difficult time with the patient not being able to lift or carry any significant weight, whatsoever, I do not feel the

> patient is employable without risk to himself or others and would disagree that the patient would be able to return to any functional work environment. Otherwise, we will be keeping the patient off work at this time and refilling his medications. We will plan to follow up the patient in one month to be able to address any new concerns. Hopefully, will be able to start expanding out the visits to a quarterly basis once the patient is stabilized on the new medications.
>
> **ACTIVITY RESTRICTIONS:** Off work. Refill of prescriptions for Kadian, Vicodin, Lyrica, and Flexeril.

(Emphasis sic.)

{¶48} 15. On April 26, 2009, at the commission's request, relator was examined by Kenneth A. Writesel, D.O., who examined for all the allowed physical conditions of the two industrial claims. In his six-page narrative report, Dr. Writesel opines:

> Please see completed Physical Strength Rating form attached. In my opinion, Mr. Knedler is capable working in a light-work capacity. In my opinion, he is most definitely not permanently and totally disabled.

{¶49} 16. Dr. Writesel completed the Physical Strength Rating form. On the form, Dr. Writesel indicated by his mark that relator is capable of light work.

{¶50} 17. Following an August 13, 2009 hearing, an SHO issued an order additionally allowing claim number 05-325083 for "aggravation of pre-existing major depression."

{¶51} 18. On October 10, 2009, at the commission's request, relator was examined by clinical psychologist Norman L. Berg, Ph.D. Thereafter, Dr. Berg issued an eight-page narrative report.

{¶52} 19. On October 10, 2009, Dr. Berg completed a form captioned "Occupational Activity Assessment Mental & Behavioral Examination." On the form, Dr. Berg indicated by his mark: "This injured work is capable of work with the limitation(s) / modification (s) noted below:" In the space provided, Dr. Berg specified his limitations.

{¶53} 20. Following a January 13, 2010 hearing, an SHO mailed an order on March 2, 2010 awarding PTD compensation starting November 12, 2008:

Permanent and total disability compensation is awarded from 11/12/2008 for the reason that the 11/12/2008 report of Dr. Manuel is the earliest supporting medical evidence.

* * *

Based upon the report of Dr. Manuel, it is found that the [I]njured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions. Therefore, pursuant to State ex rel. Speelman v. Indus. Comm. (1992) 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.

In statements dated 11/12/2008 and 01/14/2009 Dr. Manuel finds the Injured Worker permanently and totally disabled. He finds that the Injured Worker has continued numbness in both lower extremities on a daily basis with a constant pain level of 5 out of 10. His only relief is narcotic medication and neuropathic pain medication. Both of those types of medication can be very sedating. He can also utilize a TENS unit for a part of the day. The Injured Worker needs these medications around the clock to even perform activities of daily living. Because of the medication he would have to have rest breaks during the day. He goes on to find the Injured Worker as "not capable of performing even up to a sedentary level of employment on any kind of routine schedule."

Since the finding of permanent total disability is being made based only on the report of Dr. Manuel, there is no discussion of the non-medical disability factors.

{¶54} 21. On March 19, 2010, the employer requested commission reconsideration of the SHO's order of January 13, 2010 (mailed March 2, 2010).

{¶55} 22. On May 4, 2010, the three-member commission, on a two-to-one vote, mailed an interlocutory order:

The Employer's request for reconsideration, filed 03/19/2010, from the Staff Hearing Officer order, issued 03/02/2010, is referred to the Commission Level Hearings Section to be docketed before the Members of the Industrial Commission. The issues to be heard are:

1. The Employer's request for the Industrial Commission to invoke its continuing jurisdiction pursuant to R.C. 4123.52, and

2. Issue:
1) Continuing Jurisdiction pursuant To R.C. 4123.52
2) Permanent Total Disability

It is the finding of the Industrial Commission that the Employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.

Specifically, it is alleged that medical reports of Timothy [Manual], M.D., are inconsistent with his office notes, which indicate the Injured Worker is capable of working with restrictions.

Based on these findings, the Industrial Commission directs that the Employer's request for reconsideration, filed 03/19/2010, is to be set for hearing to determine whether the alleged mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

In the interest of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue(s).

{¶56} 23. On June 29, 2010, Dr. Manuel wrote:

I would first like to apologize to the Industrial Commission for the delay in this documentation. I am no longer employed at Fayette Memorial Hospital Department of Business Health. I am also no longer the physician of record for this patient.

I would first like to address the issue of the activity restrictions on this patient. The activity restrictions are discussed in my report of November 12, 2008 are the accurate activity restrictions for this patient. In my documentation on the patient visit of January 7, 2009 an error was made of continuing outdated activity restrictions for the patient and did not reflect the changes made on November 12, 2008. This error was not noted until the patient's follow-up visit of March 4, 2009. At that time the activity restrictions were corrected to the appropriate

restrictions. An oversight was made in the documentation of that date not to make note that the previous activity restrictions had been listed in error.

I would now like to address the issue of the sedation caused by the patient's need for high dose narcotics. With the level of narcotics the patient may at some point develop acclamation to these medications, but with the level of medications it is to be expected that the patient will have some degree of sedation which will adversely affect his daily activities and his ability to work. It is not conceivable to place this patient back to full work status or even a partial work status with this level of narcotics and other medications.

{¶57} 24. On July 13, 2010, two members of the three-member commission heard the employer's request for reconsideration as well as the merits of the PTD application. Commissioner Kevin R. Abrams was not present at the July 13, 2010 hearing.

{¶58} On August 4, 2010, the commission had further review and discussion.

{¶59} On September 15, 2010, the commission mailed an order that exercises continuing jurisdiction over the SHO's order of January 13, 2010 (mailed March 2, 2010) and vacates the SHO's order on grounds that it contains a clear mistake of law. Also, the commission's order mailed September 15, 2010 addresses the merits of the PTD application and denies the application.

{¶60} Chairperson Gary DiCeglio voted "no." Commissioner Jodi M. Taylor voted "yes."

{¶61} The commission's order, mailed September 15, 2010 explains:

08/04/2010 - After further review and discussion, it is the finding of the Industrial Commission that the Employer has met its burden of proving that the Staff Hearing Officer order, issued 03/02/2010, contains a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer order was improperly based upon two reports from Timothy Manu[e]l, M.D., dated 11/12/2008 and 01/14/2009. These reports were inconsistent with Dr. Manu[e]l's progress note, dated 01/07/2009, wherein Dr. Manu[e]l opined the Injured Worker could lift, push, and pull up to fifty (50) pounds. As such, the reports are not some evidence upon which an award of permanent total disability compensation may be based. See State ex rel. Genuine Parts Co. v. Indus. Comm.,

160 Ohio App.3d 99, 2005-Ohio-1447. Although Dr. Manu[e]l submitted a clarifying report, dated 06/29/2010, the report was not timely filed pursuant to Ohio Adm.Code 4121-3-34(C) (4) (a) and (d). Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and State ex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454, State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320, and State ex rel. Gobich v. Indus. Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, in order to correct this error. The Employer's request for reconsideration, filed 03/19/2010, is granted. It is further ordered that the Staff Hearing Officer order, issued 03/02/2010, is vacated.

It is the order of the Commission that the Injured Worker's IC-2 Application for Permanent Total Disability Compensation, filed 01/22/2009, is denied.

The Injured Worker sustained two work injuries while employed by the Employer of record. The first injury, to the left elbow, did not require surgical intervention. The second injury was much more severe, as evidenced by the claim allowances noted above. The Injured Worker underwent a lumbar laminectomy in 2005 and lumbar fusion in 2006. Current treatment is directed toward pain management through the use of prescription medication, a TENS unit and injections. For the allowed psychological condition, the Injured Worker has undergone psychotherapy and utilizes prescription medication.

The Commission finds the allowed conditions from Claim number 05-325083 and Claim Number 03-367229 restrict the Injured Worker to light duty work with moderate psychological limitations. This finding is based upon the examination report from Kenneth Writesel, D.O., dated 04/26/2009, and the examination report from Norman Berg, Ph.D., dated 10/10/2009. Dr. Writesel opined the Injured Worker remains capable of up to light duty work. Dr. Berg enumerated a number of moderate psychological limitations including: ability to maintain attention and concentration in a work setting; ability to relate adequately with others in a work setting; and ability to cope with routine job stress.

The Injured Worker is 36 years old; a younger person whose age is a significant vocational asset. The Injured Worker is a high school graduate. The Injured Worker testified at hearing that he can read, write, do basic math, and perform

common computer operations (email, [F]acebook, and [E]bay). The Injured Worker's education is a vocational asset.

The Injured Worker has worked as a correctional farm coordinator, press operator, sorter, warehouse worker, construction worker, fast food worker, and farmer. As a construction worker (roofer) and warehouse worker (forklift operator), the Injured Worker rose to the level of team leader. The Injured Worker supervised inmates at his former position of employment as a correctional farm coordinator.

Brett Heath, CVE, CDMS, performed a vocational assessment on 03/04/2009. Mr. Heath classified the Injured Worker's correctional farm coordinator position as a skilled, medium strength job. The press operator, sorter, and warehouse positions were classified unskilled and medium strength, with the exception of press operator, which was light work.

Mr. Heath identified numerous transferable job skills: plant cultivating, press forging, stock checking, plant farm crops, production services, directing, controlling or planning activities for others, performing repetitive or short cycle work, attaining precise set limits, tolerances and standards, working under specific instructions, dealing with people, and making judgments and decisions. Mr. Heath concluded the Injured Worker is qualified for numerous assembly and machine operator positions, which Mr. Heath specifically enumerated. The Commission, therefore, finds the Injured Worker's work experience is a vocational asset.

Accordingly, the Commission finds the Injured Worker is vocationally qualified to perform light duty work consistent with the psychological limitations noted by Dr. Berg. The Injured Worker remains capable of sustained remunerative employment and the application for permanent total disability is denied.

{¶62} 25. On the July 13, 2010 commission order, above his signature, Abrams explains:

On 08/04/2010, I discussed this mater with Cindy Albrecht, who was present at the 07/13/2010 hearing. Ms. Albrecht summarized the testimony, evidence and arguments presented at hearing. After this discussion and a review of all the evidence contained within the claim file, I vote to grant

continuing jurisdiction and deny the IC-2, Application for Permanent Total Disability Compensation, filed 01/22/2009.

{¶63} 26. On November 8, 2010, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order declaring an overpayment of PTD compensation starting November 12, 2008. $39,537.90 was stated to be the overpayment amount. The order further indicates that the overpayment will be collected as a percent of future awards.

{¶64} 27. Relator administratively appealed the November 8, 2010 bureau order.

{¶65} 28. Following a March 3, 2011 hearing, an SHO issued an order finding that relator received the compensation payments in good faith and is therefore entitled to keep the payments for the period November 12, 2008 through August 4, 2010, the date of the commission vote on the PTD application. The SHO further found that the overpayment beginning August 4, 2010 should be charged to the statutory surplus fund.

{¶66} 29. Both the employer and the bureau requested reconsideration of the SHO's order of March 3, 2011.

{¶67} 30. On June 14, 2011, the three-member commission mailed an interlocutory order stating:

> It is the finding of the Industrial Commission that the BWC and Employer have presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow, and an error by the subordinate hearing officer in the findings issued on 04/22/2011, which renders the order defective.
>
> Specifically, it is alleged that the Staff Hearing Officer misapplied R.C. 4123.511 and R.C. 4123.512 by charging to the surplus fund an overpayment of Permanent Total Disability resulting from the Commission's reversal of a Staff Hearing Officer's decision to grant the award.
>
> Based on these findings, the Industrial Commission directs that the BWC's request for reconsideration, filed 04/27/2011 and the Employer's request for reconsideration, filed 05/09/2011, are to be set for hearing to determine whether the alleged mistake of law and error by subordinate hearing

officer as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

{¶68} 31. Following an August 2, 2011 hearing, the three-member commission issued an order exercising continuing jurisdiction over the SHO's order of March 3, 2011 and vacating that order. The commission determined that the entire overpayment of $39,537.90 must be recouped pursuant to R.C. 4123.511(K).

{¶69} 32. On September 14, 2012, relator, Charles W. Knedler, filed this mandamus action.

Conclusions of Law:

{¶70} Two main issues are presented: (1) did the commission have continuing jurisdiction over the January 13, 2010 order of the SHO who awarded PTD compensation, and (2) did the vote of commissioner Abrams, who was absent from the July 13, 2010 hearing, deprive relator of due process of law under *State ex rel. Ormet Corp. v. Indus. Comm.*, 54 Ohio St.3d 102 (1990).

{¶71} The magistrate finds: (1) the commission had continuing jurisdiction over the January 13, 2010 order of the SHO, and (2) the vote of commissioner Abrams, who was absent from the July 13, 2010 hearing, deprived relator of due process of law.

{¶72} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

### The First Issue - Continuing Jurisdiction

{¶73} The reports of Dr. Manuel are the focus of the first issue. Citing *State ex rel. Genuine Parts Co. v. Indus. Comm.*, 160 Ohio App.3d 99, 2005-Ohio-1447 (10th Dist.), the commission found that the November 12, 2008 and January 14, 2009 reports of Dr. Manuel, upon which the SHO exclusively relied, were inconsistent with Dr. Manuel's January 7, 2009 report. Given the commission's citation to *Genuine Parts*, the magistrate sets forth some basic law explaining the *Genuine Parts* rationale.

{¶74} The Supreme Court of Ohio has held that a medical report can be so internally inconsistent that it cannot constitute some evidence supporting a commission decision. *State ex rel. Lopez v. Indus. Comm.,* 69 Ohio St.3d 445 (1994). By extension, the court held in *State ex rel. M. Weingold & Co. v. Indus. Comm.,* 97 Ohio St.3d 44,

2002-Ohio-5353, that substantial inconsistencies between two C-84s generated by the same examination compel the same result as in *Lopez.*

{¶75} This court followed the *M. Weingold* rationale in *Genuine Parts,* wherein this court states:

> Contrary to the respondent's contention, Dr. Snell's C-84 is not evidence upon which the commission could rely because the C-84 is inconsistent with Dr. Snell's examination notes. Recognizing this inconsistency does not require the weighing of evidence as respondent argues. We give no greater weight to either the C-84 or the examination notes. We simply find, as did the magistrate, that they relate to the same examination and that they are inconsistent. The fact that the inconsistency arises from statements contained in two different documents rather than in one report is not significant. Again, it is clear that both documents were prepared by Dr. Snell and relate to the same physical examinations. As the magistrate notes, the same rationale was applied in *State ex rel. M. Weingold & Co. v. Indus. Comm.,* 97 Ohio St.3d 44, 2002-Ohio-5353, which involved substantial inconsistencies between two C-84s arising from the same examination.

*Id.* at ¶ 4.

{¶76} In *Genuine Parts,* Dr. Snell certified the allowed lumbosacral sprain as the cause of TTD when his office notes failed to mention a lumbosacral sprain but did discuss serious disallowed and non-allowed conditions.

{¶77} In turn, the magistrate sets forth some basic law regarding final orders and the commission's continuing jurisdiction under R.C. 4123.52 is in order.

{¶78} By statute, SHOs are granted original jurisdiction to hear and decide applications for PTD awards.  R.C. 4121.34(B)(1).  There is no right to administratively appeal a decision of an SHO awarding PTD compensation.  R.C. 4123.511(D) and (E). *See* Industrial Commission Resolution No. R05-1-02 (effective September 1, 2005) and No. R95-1-03 (effective March 21, 1995).

{¶79} Thus, the SHO's order of January 13, 2010 at issue here was a final commission order as of the time of its issuance.

{¶80} The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52.  *State ex rel. Gobich v.*

*Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14.  This authority is not unlimited.  Its prerequisites are:  (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; or (5) error by an inferior tribunal.  *Id.*

{¶81}  As noted by the commission in its order, the January 7, 2009 report of Dr. Manuel provides for "activity restrictions" which are stated to be "[l]ifting, pushing, and pulling of 50 pounds maximum."  This activity restriction was found to be inconsistent with the November 12, 2008 and January 14, 2009 reports upon which the SHO relied.  It can be noted that the November 12, 2008 report states:

> Mr. Knedler's physical abilities related to what he would be able to perform in an eight-hour work day are considerably less than what is generally determined to be a sedentary level of duty.

{¶82}  At first blush, the January 7, 2009 report is inconsistent with the November 12, 2008 report.  That is, the November 12, 2008 report finds relator able to perform less than a sedentary level of work while the January 7, 2009 report finds relator able to lift, push, and pull to a maximum of 50 pounds.

{¶83}  Ohio Adm.Code 4121-3-34(B)(2)(a) provides:

> "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶84}  Ohio Adm.Code 4121-3-34(B)(2)(c) provides:

> "Medium work" means exerting twenty to fifty pounds of force occasionally, and/or ten to twenty-five pounds of force frequently, and/or greater than negligible up to ten pounds of force constantly to move objects. Physical demand requirements are in excess of those for light work.

{¶85}  It can be argued that Dr. Manuel's January 7, 2009 report suggests that relator was then capable of "medium work" because of the 50-pound restriction.  Also, Dr. Manuel refers to "shoulder work" when limiting that work to "only occasional."

{¶86} It can be observed that the November 12, 2008 report, without so stating, is premised upon Dr. Manuel's examinations that predate the report while the January 7, 2009 report or office note is premised specifically upon the January 7, 2009 examination. That is, the November 12, 2008 and January 7, 2009 reports are not based upon the same examination. Given that scenario, *Genuine Parts*, a case cited by the commission in its July 13, 2010 order, is not directly on point.

{¶87} Nevertheless, the SHO's reliance upon Dr. Manuel's November 12, 2008 report ignores Dr. Manuel's January 7, 2009 report of an examination performed subsequent to the November 12, 2008. How can the January 7, 2009 report from the same doctor who authored the November 12, 2008 report be ignored in favor of the earlier report? It cannot.

{¶88} The magistrate finds *State ex rel. Conrad v. Indus. Comm.*, 88 Ohio St.3d 413 (2000), helpful to the analysis at this point. The *Conrad* case is summarized by the magistrate in *State ex rel. Clark v. Indus. Comm.,* 10th Dist. No. 11AP-47, 2012-Ohio-937:

> [In *Conrad*], Dr. Rutherford had examined the claimant in October 1994 and found that "she would not benefit from any further surgical procedure at this time." One month later, the claimant had an acute exacerbation of her lower back condition that required emergency hospitalization. In mid-October 1995, the claimant's treating physician, Dr. Rohner, sought emergency authorization for surgery. The self-insured employer refused to authorize the surgery and the commission denied the claimant's request for authorization, citing Dr. Rutherford's report. The *Conrad* court held that Dr. Rutherford's report was not probative of the need for surgery following the 1994 exacerbation of the claimant's condition.

*Id.* at ¶ 54.

{¶89} In *Conrad*, the court observed that Dr. Rutherford's report preceded "new and changed circumstances" embodied by the exacerbation of the claimant's condition. The *Conrad* court explains:

> To endorse the continued probative value of Dr. Rutherford's report, in view of the events occurring after his examination of claimant, gives his report a *res judicata* effect. This result was rejected in *State ex rel. B.O.C. Group, GMC v. Indus.*

*Comm.* (1991), 58 Ohio St.3d 199, 201, 569 N.E.2d 496, 498, quoting 3 Larson, Workers' Compensation Law (1989) 15-426, 272(99), to 15-426, 272(100), Section 79.72(f):

" 'It is almost too obvious for comment that res judicata does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times. * * * A moment's reflection would reveal that otherwise there would be no such thing as reopening for change in condition. The same would be true of any situation in which the facts are altered by a change in the time frame * * *.' "

Given these principles and the facts presented, Dr. Rutherford's report was not probative of the need for surgery following the 1994 exacerbation of claimant's condition. The commission, therefore, abused its discretion in relying on that report to deny payment for the procedure.

*Id.* at 875.

{¶90} Here, that Dr. Manuel examined relator after he issued his November 12, 2008 report is a new and changed circumstance following the issuance of the November 12, 2008 report. On January 7, 2009, Dr. Manuel reports a very different picture of relator's work status compared to the November 12, 2008 report. On January 7, 2009, the tenor of the office note is that relator is not incapable of work. Under these circumstances, the SHO did not have the discretion to rely upon the November 12, 2008 report and reject the subsequent one. *Conrad.* While the November 12, 2008 and January 7, 2009 reports are not necessarily inconsistent under *Genuine Parts* because they are premised upon different examinations, they clearly do not present an opportunity for the SHO to choose the earlier report over the latter in order to support the PTD award.

{¶91} Accordingly, the magistrate concludes that the November 12, 2008 and January 14, 2009 reports of Dr. Manuel are not some evidence upon which the SHO could rely to support the PTD award. Reliance upon those reports was a clear mistake of law that provided the prerequisite for the commission's exercise of continuing jurisdiction. *Conrad.*

{¶92} Apparently, at the July 13, 2010 hearing before the commission, relator argued that Dr. Manuel's June 29, 2010 report must be viewed as a clarifying report

under *State ex rel. Chrysler Corp. v. Indus. Comm.*, 81 Ohio St.3d 158 (1998). In his June 29, 2010 report, Dr. Manuel asserts that his January 7, 2009 report contains an error regarding the so-called "activity restrictions," which are said to be "outdated."

{¶93} According to Dr. Manuel's June 29, 2010 report, his January 7, 2009 report fails to "reflect the changes made on November 12, 2008."

{¶94} In its July 13, 2010 order, the commission found that Dr. Manuel's June 29, 2010 report was untimely submitted under Ohio Adm.Code 4121-3-34(C)(4)(a) and (d).

{¶95} Ohio Adm.Code 4121-3-34(C) sets forth the commission's rules for the "Processing of applications for permanent and total disability." Thereunder Ohio Adm.Code 4121-3-34(c)(4) provides:

> The injured worker shall ensure that copies of medical records, information, and reports that the injured worker intends to introduce and rely on that are relevant to the adjudication of the application for permanent total disability compensation from physicians who treated or consulted the injured worker that may or may not have been previously filed in the workers' compensation claim files, are contained within the file at the time of filing an application for permanent total disability.
>
> * * *
>
> Upon the request of either the injured worker or the employer and upon good cause shown, the hearing administrator may provide an extension of time, to obtain the medical evidence described in paragraphs (C)(4)(a) and (C)(4)(b) of this rule. Thereafter, no further medical evidence will be admissible other than additional medical evidence approved by a hearing administrator that is found to be newly discovered medical evidence that is relevant to the issue of permanent total disability and which, by due diligence, could not have been obtained under paragraph (C)(4)(a) or (C)(4)(b) of this rule.

{¶96} Clearly, Dr. Manuel's June 29, 2010 report was not even in existence at the January 13, 2010 hearing before the SHO whose order (mailed March 2, 2010) was at issue before the commission on the question of continuing jurisdiction.

{¶97} The issue before the commission at the July 13, 2010 hearing was whether the SHO's order of January 13, 2010 contained a clear mistake of law upon which the

commission could premise the exercise of its continuing jurisdiction. The July 13, 2010 hearing before the commission was not, as relator seems to suggest, another opportunity for relator to submit additional evidence that might buttress the SHO's order. Moreover, relator cites to no authority suggesting that he can add to the administrative record at a commission hearing on continuing jurisdiction to support the very order under review by the commission. In short, relator's argument (Relator's Amended Brief, 30-37.) that the commission abused its discretion in refusing to consider Dr. Manuel's June 29, 2010 report lacks merit.

{¶98} Based upon the above analysis, the magistrate concludes that the commission did have continuing jurisdiction over the January 13, 2010 order of the SHO, and the commission therefore properly vacated the January 13, 2010 SHO's order that had awarded PTD compensation.

### The Second Issue - The Absent Commissioner

{¶99} Recently, in *State ex rel. Stevens v. Indus. Comm.,* 10th Dist. No. 10AP-1147, 2013-Ohio-2448, this court had occasion to determine whether the vote of commissioner Abrams, who was absent from a hearing, deprived the relator, Sophia Stevens, of due process of law under *Ormet,* essentially the issue as presented here. In *Stevens,* this court found that Abrams' vote deprived Sophia Stevens of due process of law in the commission's determination that she was not permanently and totally disabled.

{¶100} In *Stevens,* this court premised its decision on two prior cases from this court involving Abrams' absence from a hearing. Those two cases are *State ex rel. Sigler v. Lubrizol Corp.,* 10th Dist. No. 10AP-255, 2011-Ohio-4917 and *State ex rel. Evert v. Indus. Comm.,* 10th Dist. No. 11AP-465, 2012-Ohio-2404. In *Stevens,* this court, speaking through its magistrate, had occasion to summarize *Sigler* and *Evert,* two decisions that the *Stevens* court found controlling:

> In [Sigler], this court, applying *Ormet,* held that the claimant, Terry W. Sigler ("Sigler") was denied due process of law when commissioner Abrams, who was absent at a July 28, 2009 hearing, joined another commissioner in a two-to-one vote to exercise continuing jurisdiction over an SHO's order granting PTD compensation, and then denied the PTD application.

In *Sigler,* immediately above Abrams' signature on the order, Abrams indicated that he had discussed the matter with Bob Cromley who was present at the July 28, 2009 hearing. Cromley summarized the testimony, evidence and arguments presented at the hearing. Also, in the mandamus action, the commission filed an affidavit of Robert Cromley aka Bob Cromley in which Cromley averred that he has long been employed as a commission hearing officer and that, at times, he assists the commissioners when they preside at hearings. Cromley further averred that he took handwritten notes during the hearing and used those notes as a reference when discussing the case with Abrams.

Finding that Abrams' vote denied Sigler due process of law, this court explained:

Sigler testified at the hearing held before the two other commissioners. He testified about his physical condition. He testified about his attempts at vocational rehabilitation. He also testified about future medical procedures which were contemplated, including a second surgery to his injured back.

The order signed by two of the commissioners is critical of Sigler's efforts at rehabilitation. Evaluating Sigler's past efforts at rehabilitation and his ability to benefit from future rehabilitation efforts seems to be key to the finding that Sigler is or is not entitled to PTD compensation. The third commissioner should have been in a position to evaluate Sigler's credibility on these issues, not rely on the impressions and notes of a commission employee and that employee's summaries of what occurred.

* * *

Credibility, especially the credibility of a claimant, can be key to reaching a just decision in important workers' compensation cases. As long as the commission and the courts are willing to consider failure to fully pursue rehabilitation efforts as a negative factor in deciding PTD cases, the injured worker should be able to explain how he or she has done all he or she can do in pursuing rehabilitation.

As long as there are disputes among medical professionals about a claimant's physical abilities, the claimant should be able to tell, in lay terms, what he or she can do. The

claimant's credibility may help determine which medical reports the commission finds persuasive.

With today's technological capabilities, there is no reason the commission cannot have a complete record, even a video record, of the testimony before it. An absent commissioner could then make the appropriate decision without risking a violation of Due Process of Law. *Id.* at ¶ 7–8, 11–13.

It can be further noted that, in [*Evert*], this court, citing *Sigler,* also found that the vote of an absent commissioner violated the claimant's right to due process of law. In *Evert,* this court states:

The commissioners' responsibility as to fact finding is at the heart of our *Sigler* decision and the opinion of the Supreme Court of Ohio in *Ormet* which *Sigler* followed. Both decisions are founded in the requirement that government entities provide Due Process of Law.

Counsel for the commission and BWC correctly note that the credibility of the claimant in the *Sigler* case was critical to a determination of whether or not Sigler, the claimant, was entitled to receive permanent total disability compensation.

*Id.* at ¶ 7–8.

*Stevens* at ¶ 21-24.

{¶101} Here, as earlier noted, Abrams provided the following explanation above his signature on the July 13, 2010 order:

On 08/04/2010, I discussed this mater with Cindy Albrecht, who was present at the 07/13/2010 hearing. Ms. Albrecht summarized the testimony, evidence and arguments presented at hearing. After this discussion and a review of all the evidence contained within the claim file, I vote to grant continuing jurisdiction and deny the IC-2, Application for Permanent Total Disability Compensation, filed 01/22/2009.

{¶102} The July 13, 2010 order indicates that "Mr. and Mrs. Knedler" appeared. In the body of the commission's order, there is no indication that relator or his spouse testified at the hearing. The July 13, 2010 hearing was not recorded and so we do not have a hearing transcript.

{¶103} Abrams' statement that Ms. Albrecht "summarized the testimony" is puzzling because the order itself fails to reference any testimony from anyone at the hearing.

{¶104} Given Abrams' statement, this magistrate cannot find that Mr. Knedler did not testify. Obviously, if he did testify, we do not know what he said.

{¶105} Based upon the foregoing analysis, the magistrate concludes that commissioner Abrams' absence at the July 13, 2010 hearing deprived relator of due process of law that was not remedied by his discussion with Ms. Albrecht.

{¶106} Abrams' absence at the July 13, 2010 hearing deprived relator of due process of law only with respect to that portion of the commission's July 13, 2010 order that determined on the merits relator's application for PTD compensation. That is so because the merit determination of the application required the commissioners to weigh the medical evidence and to analyze the non-medical factors where witness credibility may have been at issue.

{¶107} However, Abrams absence from the July 13, 2010 hearing did not deprive relator of due process of law with respect to the commission's determination that the January 13, 2010 order of the SHO contained a clear mistake of law. That is so because the determination of a clear mistake of law did not rest upon witness credibility at the July 13, 2010 hearing. Moreover, had the commission failed to exercise its continuing jurisdiction over the SHO's order of January 13, 2010, respondent employer would be entitled to a writ of mandamus ordering the commission to vacate the SHO's order of January 13, 2010 due to the clear mistake of law. *See State ex rel. B & C Machine Co. v. Indus. Comm.,* 65 Ohio St.3d 538 (1992) (Expanding the commission's continuing jurisdiction to include a clear mistake of law, the court explains the relationship between mandamus and the exercise of continuing jurisdiction over a clear mistake of law.).

{¶108} As earlier noted, on November 8, 2010, the bureau mailed an order declaring an overpayment of PTD compensation starting November 12, 2008. $39,537.90 was stated to be the overpayment amount.

{¶109} Following a March 3, 2011 hearing, an SHO issued an order finding that relator is entitled to keep the payments for the period November 12, 2008 through August 4, 2010. The SHO further found that the overpayment beginning August 4, 2010 should be changed to the statutory surplus fund.

{¶110} On June 14, 2011, the three-member commission mailed an interlocutory order.

{¶111} Following a August 2, 2011 hearing, the three-member commission issued an order exercising continuing jurisdiction over the SHO's order of March 3, 2011 and vacating the order. The commission determined that the entire overpayment of $39,537.90 must be recouped pursuant to R.C. 4123.511(K).

{¶112} Given that the portion of the commission's July 13, 2010 order that determined the merits of relator's PTD application must be vacated, and that further administrative proceedings must be conducted, it is clear that the bureau's order of November 8, 2010 declaring an overpayment cannot stand at this point in the proceedings. Likewise, the commission orders that followed the bureau's November 8, 2010 declaration of overpayment cannot stand. The commission must therefore vacate the bureau's November 8, 2010 order and the several orders that follow the bureau's order.

{¶113} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate that portion of its July 13, 2010 order that determines that relator is capable of sustained remunerative employment, and denies the PTD application on that basis, and to conduct an additional hearing on relator's PTD application with all three commissioners present and participating, or conduct an additional hearing with sufficient record of the proceedings such that the necessary credibility determinations can be made by all the commissioners. Also, the writ must order that the commission vacate the bureau's November 8, 2010 order declaring an overpayment and the several orders that follow the bureau's order.

/S/ MAGISTRATE
KENNETH W. MACKE

NOTICE TO THE PARTIES
Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).