The STATE ex rel. GENUINE PARTS COMPANY

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Genuine Parts Co. v. Indus. Comm.*, 160 Ohio App.3d 99, 2005-Ohio-1447.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–336.

Decided March 29, 2005.

Dinsmore & Shohl, L.L.P., and Michael L. Squillace, for relator.

Jim Petro, Attorney General, and Paul H. Tonks, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Ward, Kaps, Bainbridge, Maurer & Melvin, L.L.P., and Matthew A. Weller, for respondent Terri Pool–Snodgrass.

---

KLATT, Judge.

{¶ 1} Relator, Genuine Parts Company, commenced this original action in mandamus seeking an order compelling respondent Industrial Commission of Ohio to vacate its order awarding temporary total disability ("TTD") compensation beginning June 12, 2002, to respondent Terri Pool–Snodgrass ("claimant") and to enter an order denying that compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court, who issued a decision, including findings of fact and conclusions of law (attached as an appendix). In his decision, the magistrate found that (1) Dr. Snell's C–84 does not constitute "some evidence" upon which the commission could rely because the C–84 was inconsistent with Dr. Snell's examination notes and (2) Dr. Smith's report could provide some evidence supporting a TTD award if, on remand to the commission, the claimant presented new evidence that Dr. Smith would certify a specific period of TTD compensation for the claimant.

{¶ 3} Relator has filed objections to the magistrate's decision, arguing that the magistrate erred in recommending that this case be returned to the commission to take additional evidence from Dr. Smith as to the period of TTD compensation. Respondent commission has also filed objections to the magistrate's decision, arguing that the magistrate erred in concluding that Dr. Snell's C–84 did not constitute evidence supporting the commission's TTD award and that it was error to order the commission to "take additional evidence from Dr. Smith." We will address respondent's objections first.

{¶ 4} Contrary to the respondent's contention, Dr. Snell's C–84 is not evidence upon which the commission could rely because the C–84 is inconsistent with Dr. Snell's examination notes. Recognizing this inconsistency does not require the weighing of evidence as respondent argues. We give no greater weight to either the C–84 or the examination notes. We simply find, as did the magistrate, that they relate to the same examination and that they are inconsistent. The fact that the inconsistency arises from statements contained in two different documents rather than in one report is not significant. Again, it is clear

that both documents were prepared by Dr. Snell and relate to the same physical examinations. As the magistrate notes, the same rationale was applied in *State ex rel. M. Weingold & Co. v. Indus. Comm.*, 97 Ohio St.3d 44, 2002-Ohio-5353, 776 N.E.2d 69, which involved substantial inconsistencies between two C–84s arising from the same examination.

{¶ 5} Both relator and respondent object to the magistrate's recommendation that we issue a writ of mandamus ordering the commission "to take additional evidence from Dr. Smith as to the period of temporary total disability." We agree with relator and respondent that such an order would be inappropriate under these circumstances.

{¶ 6} The claimant had the opportunity to present evidence supporting her request for TTD compensation. Based upon the evidence presented, the commission made its determination. The magistrate found that the evidence relied upon by the commission was insufficient to support the award. For the reasons previously noted, Dr. Snell's C–84 was not evidence upon which the commission could rely because it conflicted with his office notes. It is unclear whether the commission relied upon Dr. Smith's report. Regardless of whether the commission relied upon Dr. Smith's report, the report is not sufficient to support an award of TTD compensation. Therefore, there simply is insufficient evidence to support an award of TTD.

{¶ 7} Following an independent review of this matter, we adopt the magistrate's findings of fact, but only those portions of his conclusions of law that address Dr. Snell's report. We sustain the objections of relator and the commission with respect to the magistrate's recommendation that we return this matter to the commission to take additional evidence from Dr. Smith. We further issue a writ of mandamus ordering the commission to vacate its order awarding TTD compensation beginning June 12, 2002, and to enter a new order denying said compensation.

Objections sustained in part
and overruled in part;
writ of mandamus granted.

BROWN, P.J., and LAZARUS, J., concur.

## APPENDIX

### MAGISTRATE'S DECISION

### IN MANDAMUS

KENNETH W. MACKE, Magistrate.

{¶ 8} In this original action, relator, Genuine Parts Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its

order awarding temporary total disability ("TTD") compensation beginning June 12, 2002, to respondent Terri Pool–Snodgrass and to enter an order denying compensation.

*Findings of Fact:*

{¶ 9} 1. On January 10, 1998, Terri Pool–Snodgrass ("claimant") sustained an industrial injury while employed with relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim was initially allowed for "lumbosacral sprain" and disallowed for "L5–S1 bulging disc."

{¶ 10} 2. In July 2002, claimant moved for an additional claim allowance. In support, claimant submitted a report dated July 10, 2002, from her attending physician, Edward D. Snell, M.D. In the report, Dr. Snell wrote: "The resultant MRI revealed a disc bulge and degenerative disc disease. The degenerative disc disease was aggravated by the 1/10/98 incident." Claimant also moved for TTD compensation.

{¶ 11} 3. Claimant's motion prompted relator to have claimant examined by an orthopedic surgeon, David W. Smith, D.O., who had previously examined claimant on May 11, 2000. Dr. Smith examined claimant on August 13, 2002 and issued a report stating:

Today, she reports low back pain with any repetitive motion to the low back as in that work conducted at Napa Auto Parts. She last worked 6/11/2002. She is receiving no treatment of any kind at this time because of claim difficulties. She is able to get nothing approved.

\* \* \*

*RECORD REVIEW:* I have reviewed all of the records provided both for this visit and last and have compared them carefully. Very definite differences are noted. I note especially the records of Dr. Edward Snell who has cared for her over the past four or five years and has chronologically noted the changes in her condition. The issue with this visit is the claimant's motion to have her claim additionally allowed for aggravation of preexisting degenerative disc disease of the lumbar spine and payment for temporary total compensation due to her disability beginning 6/9/2002.

*OPINIONS:* Based upon a reasonable degree of medical certainty and probability, based on my examination of the claimant on two occasions, based on my review of the medical records provided including comparative MRIs and current conventional lumbar spine x-rays and based on my review of all of the prior medical records provided to me, I hold the following professional medical opinions.

1. This claimant has not yet reached maximum medical improvement. As a matter of fact, her condition is deteriorating as noted on my examination today

with significant deterioration in strength and neurological changes in the right lower extremity. Note the objective and subjective findings in my examination report today.

2. Based on significant changes in the MRI report from near the time of injury in 1998 and currently, there was definite aggravation of preexisting degenerative disc disease involving the lower lumbar spine apparently brought on by the industrial injury of 1/10/98. A certain amount of this would be as a result of natural aging as well. However, there has been a very significant difference in the two MRIs which would tend to support aggravation by injury. I appreciate the fact that aggravation is defined as something having a real adverse effect on the preexisting condition. I believe that this requirement has been met for the condition to be compensable.

3. I believe that the restrictions for her lumbar spine are due in effect to the aggravation of the degenerative disc disease lumbosacral spine. In this case, we are not talking, about returning to work but getting a definitive evaluation by a spine surgeon, whether orthopedic or neurosurgical. Her condition will no longer respond to nonsurgical measures.

4. The condition described as aggravation of preexisting degenerative disc disease of the lumbar spine has not resolved and needs surgical attention.

5. Regarding maximum medical improvement, I believe that she has reached maximum medical improvement as far as conservative treatment is concerned. She is not likely to respond to other physical measures earlier described from this point forth.

{¶ 12} 4. Following a November 26, 2002 hearing before a staff hearing officer ("SHO"), the claim was additionally allowed for "aggravation of pre-existing degenerative disc disease at L5–S1," based in part upon the reports from Drs. Snell and Smith. The SHO's order of November 26, 2002 recognizes that claimant withdrew her request for TTD compensation.

{¶ 13} 5. In the meantime, on June 18, 2002, claimant was examined by Dr. Snell. In his office note of June 18, 2002, Dr. Snell wrote:

I saw her about two years ago on 4/13/00. * * * [S]ince the beginning of [M]ay, just recently, she started having severe exacerbation of her back pain, to the point where it radiates down into her thighs, more on the right than the left. It interferes with her activities of daily living. It interferes with her home life and interferes with her work. She has continued to work full time.

*ASSESSMENT*: L5–S1 disc bulge. Probably herniation at this point.

{¶ 14} 6. On June 27, 2002, claimant again was examined by Dr. Snell. In his office note of June 27, 2002, Dr. Snell wrote: "Her exam is essentially unchanged.

She has L5–S1 and L4–5 disc bulge with DDD and possibly a herniation at this point with continuing problems."

{¶ 15} 7. On May 29, 2003, some 11 months following the June 27, 2002 examination, Dr. Snell filled out and signed a C–84 on which he certified a period of temporary total disability beginning "5/2002" to an estimated return-to-work date of January 1, 2005.

{¶ 16} Dr. Snell failed to indicate on the C–84 the date of the last examination as the form requests.

{¶ 17} The C–84 form asks the attending physician to "[l]ist ICD–9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work."

{¶ 18} In response to the above query, Dr. Snell wrote "lumbosacral sprain."

{¶ 19} The C–84 form asks the attending physician to "[l]ist ICD–9 Codes with narrative diagnosis(es) for other allowed conditions being treated."

{¶ 20} In response to the above query, Dr. Snell wrote "aggravation of pre existing degenerative disc disease L5–S1."

{¶ 21} 8. Following a November 13, 2003 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation beginning June 12, 2002. Relator administratively appealed.

{¶ 22} 9. On December 11, 2003, claimant was again examined by Dr. Snell. In his office note of December 11, 2003, Dr. Snell wrote:

DATE: 12/11/03

SUBJECTIVE: This is a patient who comes in on 12/11/03. She is moving a little bit better, does not do anything to aggravate back pain. The right calf still has a dull sensation to it, it become[s] immobile if the pain starts significantly bad. She has an L5–S1 herniation. She is on a multivitamin, Diovan, Nexium, and birth control, in addition to her Zoloft and Vicodin. She has a herniation at L5–S1 which elicits L5–S1 nerve root compression at the outlet of her lumbosacral spine.

OBJECTIVE: On exam today she is in no active distress. Blood pressure 120/70, pulse 89, respirations 16 and afebrile. Weight is 243 lbs. *Exam of the low back* reveals tenderness to palpation along the paralumbar sacral region, increased with forward flexion. Positive straight leg raise on the right at about 40 degrees. She has no significant neurovascular compromise except for some mild decrease in strength with knee extension. Neurovascular: Intact. No obvious soft tissue swelling or ecchymosis. A little bit of spasm is the only thing I can appreciate.

ASSESSMENT: L5–S1 herniated disc with right L5–S1.

(Emphasis sic.)

{¶ 23} 10. Following a January 7, 2004 hearing, an SHO issued an order stating:

The order of the District Hearing Officer, from the hearing dated 11/13/2003, is MODIFIED TO THE FOLLOWING EXTENT. Therefore, the C–84, filed 06/02/2003, is GRANTED TO THE EXTENT OF THIS ORDER.

Temporary total disability compensation is awarded for the period 06/12/2002 through 12/31/2003, to continue upon presentation of medical evidence of continuing temporary total disability. This award is based on the 05/29/2003 C–84 form from Dr. Snell.

Also persuasive, but not technically relied upon, was the 08/13/2002 Independent Medical Examination performed by Dr. Smith on behalf of the self-insuring employer. Dr. Smith concludes that the claimant has not reached maximum medical improvement and also that the claimant was not able to return to her former position of employment at that time.

The Staff Hearing Officer has considered the employer's argument that office notes from Dr. Snell and other evidence, particularly the Independent Medical Exam by Dr. David [Smith], would support the conclusion that the claimant's disability is primarily due to the disallowed bulging disc at L5–S1, or possibly the unallowed herniated disc at the same level, which has been demonstrated by recent MRI. The Staff Hearing Officer notes the practical difficulty in distinguishing between the disability at this level of the spine caused by the allowed and unallowed conditions. After reviewing the evidence, the Staff Hearing Officer finds the weight of the evidence supports the conclusion particularly from Dr. Smith that the claimant's disability is caused by the degenerative disc disease.

In evaluating the employer's request for a finding of maximum medical improvement, the Staff Hearing Officer further notes that, by companion order, a surgical consultation is being authorized, indicating that treatment which is not merely conservative is under serious consideration, a contra-indication of maximum medical improvement.

{¶ 24} 11. On February 4, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of January 7, 2004.

{¶ 25} 12. On March 30, 2004, relator, Genuine Parts Company, filed this mandamus action.

*Conclusions of Law:*

{¶ 26} Two main issues are presented: (1) whether Dr. Snell's May 29, 2003 C–84 constitutes some evidence upon which the commission can rely to support its

award of TTD compensation and (2) whether the August 13, 2002 report of Dr. Smith is some evidence upon which the commission could rely to support a TTD award.

{¶ 27} The magistrate finds (1) Dr. Snell's C–84 does not constitute some evidence upon which the commission can rely and (2) Dr. Smith's August 13, 2002 report can constitute some evidence upon which the commission could rely to support a TTD award if Dr. Smith is willing to certify a specific period of disability.

{¶ 28} Turning to the first issue, although Dr. Snell failed to give the date of the examination supporting his May 29, 2003 C–84 certification of temporary total disability, it is clear from the record that the examinations of June 18, 2002 and June 27, 2002, were the most recent examinations prior to the certification. Dr. Snell's May 29, 2003 C–84 certification was premised upon examinations that predate the certification by some 11 months.

{¶ 29} On the C–84, Dr. Snell certified that "lumbosacral sprain" was the condition being treated that prevents a return to work. Dr. Snell listed "aggravation of pre existing degenerative disc disease L5–S1" as another allowed condition being treated. Based upon Dr. Snell's responses to the C–84 queries, "lumbosacral sprain" is the only allowed condition that he certified as causing temporary total disability.

{¶ 30} Certification of the lumbosacral sprain as the cause of temporary total disability is clearly inconsistent with Dr. Snell's June 18, 2002 and June 27, 2002 office notes.

{¶ 31} At the June 18, 2002 office visit, Dr. Snell assessed "L5–S1 disc bulge," a disallowed condition. There is no mention of a lumbosacral sprain in the office note.

{¶ 32} Following the June 27, 2002 office visit nine days later, Dr. Snell recorded that "[h]er exam is essentially unchanged." Again, there is no mention of a lumbosacral sprain in the June 27, 2002 office note.

{¶ 33} This magistrate must view skeptically the discrepancy between the May 29, 2003 certification based on the five-year-old lumbosacral sprain and the office notes that fail to mention the lumbosacral sprain but discuss serious disallowed and nonallowed conditions.

{¶ 34} The Supreme Court of Ohio has held that internally inconsistent doctors' reports cannot be "some evidence" supporting a commission decision. *State ex rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 633 N.E.2d 528. By extension, the court held in *State ex rel. M. Weingold & Co. v. Indus. Comm.*, 97 Ohio St.3d 44, 2002-Ohio-5353, 776 N.E.2d 69, that substantial inconsistencies

between two C–84s generated by the same examination compel the same result decided in *Lopez.*

{¶ 35} *Weingold* is instructive here. Substantial inconsistencies exist between Dr. Snell's office records and his May 29, 2003 C–84. Based upon *Weingold,* the magistrate concludes that Dr. Snell's May 29, 2003 C–84 cannot constitute the "some evidence" supporting the commission's TTD award. However, elimination of Dr. Snell's C–84 from evidentiary consideration does not end the inquiry here.

{¶ 36} After stating that the award is based on Dr. Snell's C–84, the SHO states that Dr. Smith's August 13, 2002 report is persuasive "but not technically relied upon." Later on, the SHO states that "[a]fter reviewing the evidence, the Staff Hearing Officer finds that the weight of the evidence supports the conclusion particularly from Dr. Smith that the claimant's disability is caused by the degenerative disc disease."

{¶ 37} The SHO's treatment of Dr. Smith's report is ambiguous. The ambiguity of the SHO's reliance upon Dr. Smith's report is significant because of the elimination of Dr. Snell's C–84 from further evidentiary consideration.

{¶ 38} Dr. Smith's report could provide some evidence supporting a TTD award if Dr. Smith is willing to certify a specific period of temporary total disability for the claimant.

{¶ 39} Dr. Smith acknowledged that one of the issues with claimant's August 13, 2002 visit was claimant's request for TTD compensation. Dr. Smith's report could be viewed by the commission as containing an opinion that the aggravation of preexisting degenerative disc disease causes temporary total disability where it states that "we are not talking about returning to work but getting a definitive evaluation by a spine surgeon." *State ex rel. Nelson McCoy Pottery Co. v. Wilson* (1990), 56 Ohio St.3d 28, 564 N.E.2d 91.

{¶ 40} Even though Dr. Smith's report can be construed as an opinion that claimant is temporarily totally disabled due to an allowed condition of the claim, Dr. Smith did not certify a specific period of disability. Although the commission may not create a period of disability out of whole cloth, it can take additional evidence from Dr. Smith as to the period of claimant's disability. See *State ex rel. Fries v. Bur. of Workers' Comp.,* Franklin App. No. 01AP–721, 2002-Ohio-3252, 2002 WL 1377785.

{¶ 41} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order awarding TTD compensation beginning June 12, 2002 to eliminate Dr. Snell's C–84 from further evidentiary consideration, to take additional evidence from Dr.

Smith as to the period of temporary total disability, and to enter a new order that adjudicates the request for TTD compensation.