[Cite as *State ex rel. Robertson v. Indus. Comm.*, 2014-Ohio-2417.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. LaShawn Robertson, :

      Relator, :

v. :       No. 13AP-77

Industrial Commission of Ohio and :     (REGULAR CALENDAR)
Whirlpool, Inc.,
                                 :

      Respondents. :

                                   :

---

D E C I S I O N
Nunc Pro Tunc[1]

Rendered on June 5, 2014

---

*Larrimer and Larrimer*, and *Thomas L. Reitz*, for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester*, for respondent Industrial Commission of Ohio.

*Bugbee & Conkle, LLP*, *Mark S. Barnes*, and *Janelle M. Matuszak*, for respondent Whirlpool, Inc.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

T. BRYANT, J.

{¶1} Relator, LaShawn Robertson, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order exercising continuing jurisdiction under R.C. 4123.52 and to issue an order reinstating its staff hearing officer's ("SHO") order

---

[1] This decision, nunc pro tunc, is issued to correct an error in the designation of attorneys for respondent Whirlpool, Inc.

regarding respondent Whirlpool, Inc.'s ("Whirlpool") liability to pay temporary total disability ("TTD") compensation.

## I. BACKGROUND

{¶2}  Relator had an allowed claim for left shoulder bursitis and disallowed claims for a left shoulder labral tear and a left shoulder sprain or strain.  Relator had surgery on her left shoulder.  The post-operative diagnoses in the operative report listed three conditions, none of which was the allowed claim but one listed was shoulder impingement.  Two procedures were listed as the operation performed, but neither addressed the allowed condition.  However, under the description of the operation, the report stated that a complete bursectomy and acromioplasty were performed, addressing the allowed condition.  The SHO found that relator was entitled to TTD compensation due to impairment resulting from the allowed condition of left shoulder bursitis since the post-operative diagnosis of left shoulder impingement is another name for bursitis, and the actual description of the surgery included a complete bursectomy and acromioplasty.  The commission exercised continuing jurisdiction based on a mistake of fact and law that shoulder impingement is another name for bursitis without any medical evidence to support the finding.  The commission concluded that relator was only entitled to TTD compensation from January 14 through August 14, 2011 and to continue through November 13, 2011 with submission of appropriate supporting medical evidence.  However, the commission found relator was not entitled to TTD compensation after November 14, 2011, based upon a report of an examination by a second doctor on November 1, 2011, who opined that the allowed condition had resolved "long ago."  The request for a writ of mandamus followed.

{¶3}  This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  The parties filed a stipulated record and merit briefs.  The magistrate issued a decision, including findings of fact and conclusions of law, which are appended hereto.  In the decision, the magistrate recommended that this court grant relator's request and issue a writ of mandamus ordering the commission to vacate its January 5, 2012 order that exercised continuing

jurisdiction over the August 9, 2011 SHO's order and to enter an order that reinstates the SHO's August 9, 2011 order.

{¶4}    The magistrate concluded the commission improperly exercised its continuing jurisdiction based on a mistake of fact which was a "finding [that] was not key to the SHO's determination that the June 27, 2011 surgery was, at least in part, necessitated by the allowed bursitis condition."  The SHO determined that bursitis, an allowed condition, is the equivalent of shoulder impingement, a non-allowed condition.

{¶5}    The magistrate determined that the SHO's determination that bursitis, an allowed condition, is the equivalent of shoulder impingement, a non-allowed condition, was "largely irrelevant" because the surgery report contained a description of the operation stating that a complete bursectomy and acromioplasty were performed.  Thus, the doctor performed the surgery, at least in part, due to an allowed condition.

## II.  OBJECTIONS

{¶6}    Both the commission and Whirlpool filed objections to the magistrate's decision.  By Whirlpool's objection, it argues that "[t]he magistrate failed to find [sic] the Commission abused its discretion, and therefore erred in granting a writ of mandamus and vacating the Commission's January 5, 2012 order.  Moreover, the magistrate usurped the Commission's adjudicative role, rendering a decision unsupported by case law authority and based on an incorrect application of Ohio law."  The commission's objection is that "[t]he Magistrate erred in usurping the role of the commission and acting as the trier of fact."  Both objections raise essentially the same issue that the magistrate erred in finding that the commission abused its discretion.

## III.  DISCUSSION

{¶7}    The commission exercised its continuing jurisdiction based upon a mistake of fact and law.  "The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52."  *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 14, citing *State ex rel. Royal v. Indus. Comm.,* 95 Ohio St.3d 97, 99 (2002).  However, this power is not unlimited and continuing jurisdiction can only be invoked when one of the following requirements has been met:  (1) new and changed circumstances, (2) fraud, (3) clear

mistake of fact, (4) clear mistake of law, and (5) error by an inferior tribunal. *Id.*, citing *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998).

{¶8} Here, the commission exercised its continuing jurisdiction finding a mistake of law and fact based on the SHO's determination that shoulder impingement is another name for bursitis without any medical evidence to support it. The magistrate found that the commission improperly exercised its continuing jurisdiction because this determination was irrelevant given that the surgery report contained a description of the operation stating that a complete bursectomy and acromioplasty were performed. Thus, the surgery was performed, at least in part, due to an allowed condition.

{¶9} The commission's medical findings and disability determinations must be based on medical opinions. *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 58 (1998). The commission abuses its discretion when it grants an award without medical evidence to support the disability. *Id.* The magistrate here recognized that the SHO's order does not cite to medical evidence to support the finding that bursitis and shoulder impingement are synonymous. Moreover, in its request for reconsideration, Whirlpool cited to a report from Dr. Hogya who stated that shoulder impingement is a non-allowed condition, and the bursitis is not associated with total disability over seven months after the injury. Thus, the commission did not improperly exercise its continuing jurisdiction.

{¶10} Once the commission has properly invoked continuing jurisdiction, the commission is vested with the authority to address any issues. *State ex rel. Sheppard v. Indus. Comm.*, 10th Dist. No. 11AP-553, 2012-Ohio-4301. In *Sheppard*, this court reaffirmed that "once the commission's continuing jurisdiction is invoked in an order articulated with specific reasons therefore, the commission is vested with the authority to address any issues pertaining to the order in question." *Id.* at ¶ 7, citing *State ex rel. Hayes v. Indus. Comm.*, 10th Dist. No. 01AP-1087, 2002-Ohio-3675. The commission relied upon a report from Dr. Hogya, a second doctor that examined relator on November 1, 2011, several months after the surgery, who opined that the allowed condition had resolved "long ago." On that basis, the commission denied further TTD compensation after November 14, 2011, but allowed TTD compensation through the

surgery date and recovery.  Ultimately, it is the commission, not this court, who is the exclusive evaluator of the weight and credibility of the evidence.  *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000).  Thus, the commission's and Whirlpool's objections are sustained.

## IV.  CONCLUSION

{¶11}  In conclusion, after review of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of all the objections, we find that the magistrate has properly determined the pertinent facts and adopt them as our own.  Both the commission's and Whirlpool's objections are sustained.  For the reasons set forth in this decision, however, we do not adopt the magistrate's conclusions of law and deny the requested writ of mandamus.

*Objections sustained;*
*writ of mandamus denied.*

KLATT, J., concurs.
TYACK, J., dissents.

TYACK, J. dissenting.

{¶ 12}  Because I see the magistrate's decision as correctly addressing the pertinent issues, I would adopt it and grant the writ as indicated.  Because the majority of this panel does not do so, I respectfully dissent.

T. BRYANT, J., retired, formerly of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel. LaShawn Robertson,   :

       Relator,                    :

v.                                   :                No. 13AP-77

Industrial Commission of Ohio and    :       (REGULAR CALENDAR)
Whirlpool, Inc.,

                                   :

       Respondents.           :

                                   :

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on August 27, 2013

*Larrimer and Larrimer,* **and** *Thomas L. Reitz*, **for relator.**

*Michael DeWine*, **Attorney General, and** *Naveen V. Ramprasad,* **for respondent Industrial Commission of Ohio.**

*Bugbee & Conkle, LLP, Mark S. Barnes, Andrew J. Wilhelms,* **and** *Janelle M. Matuszak,* **for respondent Whirlpool, Inc.**

## IN MANDAMUS

{¶13} In this original action, relator, LaShawn Robertson, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its January 5, 2012 order that exercised continuing jurisdiction over the August 9, 2011 order of its staff hearing officer ("SHO") and to enter an order reinstating the SHO's order that had ruled upon the May 10, 2011 motion of respondent, Whirlpool,

Inc. ("Whirlpool"), regarding its liability to pay temporary total disability ("TTD") compensation.

Findings of Fact:

{¶14}  1.  On August 9, 2010, relator injured her left shoulder while employed as a laborer for respondent Whirlpool Inc., a self-insured employer under Ohio's Workers' Compensation laws.

{¶15}  2.  Following a January 12, 2011 hearing, a district hearing officer ("DHO") allowed the industrial claim (No. 10-839695) for:  "left shoulder bursitis; labral tear left shoulder."

{¶16}  3.  Whirlpool administratively appealed the DHO's order of January 12, 2011.

{¶17}  4.  Following a March 14, 2011 hearing, an SHO issued an order that modified the DHO's order.  The SHO allowed the claim for "left shoulder bursitis" but disallowed the claim for "labral tear, left shoulder" and "sprain/strain left shoulder." The SHO's order also stated "temporary total disability compensation remains payable upon submission of proof of disability due to allowed conditions within this claim."

{¶18}  5.  After her injury, relator came under the care of orthopedic surgeon David D. Lin, M.D.  Following a January 4, 2011 office examination, Dr. Lin diagnosed left shoulder bursitis and superior glenoid labrum lesion.

{¶19}  6.  On February 3, 2011, Dr. Lin completed a C-84 on which he certified TTD beginning January 4, 2011.  On the C-84, Dr. Lin listed the ICD-9 codes for shoulder bursitis and superior glenoid labrum lesion.

{¶20}  7.  On February 9, 2011, relator was examined by Dr. Lin during an office visit.  Dr. Lin's office note of that date lists shoulder bursitis and superior glenoid labrum lesion as the assessments.

{¶21}  8.  On March 29, 2011, Dr.  Lin completed another C-84 on which he certified TTD from February 9, 2011 to an estimated return-to-work date of May 2, 2011. On the C-84, Dr. Lin only listed the ICD-9 code for shoulder bursitis.  He also indicated that relator was waiting for approval of surgery.  February 9, 2011 was listed as the date of last examination.

{¶22} 9. On May 10, 2011, Whirlpool moved for "clarification of its liability, if any, to pay ongoing temporary total compensation in this claim." Whirlpool claimed that Dr. Lin's C-84s are inconsistent with his office notes as to the conditions being treated.

{¶23} 10. Following a June 24, 2011 hearing, a DHO issued an order addressing Whirlpool's May 10, 2011 motion. The DHO noted that Whirlpool had paid TTD compensation up to January 14, 2011, but had refused to pay further compensation on grounds that the disability was caused by the labral tear. The DHO ordered Whirlpool to pay TTD compensation from January 14, 2011 "to present and continuing."

{¶24} 11. Whirlpool administratively appealed the DHO's order of June 24, 2011.

{¶25} 12. On June 27, 2011, relator underwent left shoulder surgery performed by Dr. Lin. In his June 27, 2011 operative report, Dr. Lin lists three post-operative diagnoses:

> [One] Left shoulder impingement.
> [Two] Degenerative labral tear.
> [Three] Arthritis, post-traumatic.

{¶26} Under "Operation Performed," Dr. Lin lists two procedures:

> [One] Left shoulder arthroscopic subacromial decompression.
> [Two] Left shoulder extensive debridement.

{¶27} Under "Description of Operation," Dr. Lin wrote:

> A standard posterior portal hold of the shoulder joint itself was established followed by the direct anterior portal hold. The shoulder itself had extensive posttraumatic and degenerative processes going on including a degenerative SLAP tear with significant degeneration of the posterior labrum. The tissue was very poor and friable. This was not a repairable tear. The labrum itself was not degenerative. We did extensive debridement of the shoulder and including debriding and removing the posterior aspect of the labrum. The cuff appeared to be intact. The joint also had significant arthritis with Grade II changes and this was debrided back. Extensive debridement was performed. We turned our attention to the subacromial space. She had extensive bursitis and inflammation in this region and a complete bursectomy and acromioplasty were performed using bipolar

device, clipper and burr. An acromioplasty was performed back to the plantar surface.v b

{¶28} 13. On August 3, 2011, Paul T. Hogya, M.D., who had previously examined relator on May 17, 2011 on behalf of Whirlpool, wrote:

The additional medical documentation, including the operative report left shoulder dated 6/27/11 confirms my opinion as outlined in my report dated 5/31/11. Post-operative diagnoses included Left Shoulder Impingement; Degenerative Labral Tear; and Arthritis, Post-Traumatic. These are non-occupational and disallowed conditions. Thus, the period of total disability 3/1/11 through 5/1/11 and surgery were for non-occupational and disallowed conditions. Left shoulder bursitis from 8/9/10 is not associated with total disability over 7 months after date of injury.

{¶29} 14. On August 8, 2011, Dr. Lin wrote:

It is my opinion, within a reasonable degree of medical probability that the following procedure(s) were performed on June 27, 2011 to specifically address the allowed left shoulder bursitis condition:

Extensive debridement[;] Bursectomy[;] Acromioplasty[.]

{¶30} 15. Following an August 9, 2011 hearing, an SHO issued an order that modified the DHO's order of June 24, 2011.  The SHO's order of August 9, 2011 explains:

The order of the District Hearing Officer, from the hearing of 06/24/2011, published 06/29/2011, is hereby MODIFIED to the extent of this order, only. Therefore, the Employer's C-86 motion, filed 05/10/2011, is hereby granted to the extent of this order, only. This order does clarify the liability of the Self-Insuring Employer Whirlpool Corporation to pay further temporary total disability compensation in this claim.

The Employer's C-86 motion, filed 05/10/2011, "requests clarification of its liability, if any, to pay ongoing temporary total compensation in this claim."

The basis for the Employer's request is the following facts:

The Injured Worker's attending physician, David D. Lin, M.D., had previously completed numerous C-84 Physician's Disability Statements, dated 10/28/2010, 12/01/2010, 12/14/2010, and 02/03/2010, all indicating that the Injured Worker was temporarily and totally disabled for two separate conditions. Dr. Lin listed the conditions of 840.7, which is the ICD code for superior glenoid labrum lesion, and 726.10, which is the ICD code for disorders of bursae.

However, when this claim was subsequently formally <u>disallowed</u> for the condition of labral tear, left shoulder, and sprain/strain, left shoulder, pursuant to the Industrial Commission Staff Hearing Officer's order of 03/14/2011, published 03/17/2011, the next C-84 Physician's Disability Statement, completed by David D. Lin, M.D., on 03/29/2011, no longer listed the ICD code of 840.7, for superior glenoid labrum lesion, as a condition being treated which prevents the Injured Worker's return to work and only listed the condition of 726.10, disorders of bursae. Dr. Lin did not submit a written explanation of hwy he had disorders of bursae. Dr. Lin did not submit a written explanation of why he had changed the listing of the condition(s) being treated which prevent a return to work. Furthermore, the Employer notes that Dr. Lin's office notes continued to discuss the condition of a labral lesion of the left shoulder. Therefore, the employer argued that the C-84 statements subsequent to 03/14/2011, could not be relied upon.

Furthermore, at box 10 of the C-84 form, Dr. Lin indicated that his recommendation for disability was based on the fact that the Injured Worker was awaiting surgery approval.

That surgery was performed on 06/27/2011, consisting of left shoulder arthroscopic subacromial decompression and left shoulder extensive debridement. Furthermore, the post-operative diagnoses were left shoulder impingement, degenerative labral tear and post-traumatic arthritis. The Employer takes the position that none of those three conditions is currently recognized in this claim and that the surgery was performed for non-allowed and disallowed conditions and, therefore, temporary total disability compensation is not payable.

However, this Staff Hearing Officer notes that the allowed condition of left shoulder (subacromial) bursitis is another

name used for the condition of shoulder impingement, which was one of the pre-operative and post-operative diagnoses for the surgery of 06/27/2011.

Furthermore, the actual description of the operation, itself, indicates that after treating the degenerative labral tear, Dr. Lin then, "turned our attention to the subacromial space. She had extensive bursitis and inflammation in this region and a complete bursectomy and acromioplasty were performed using bipolar device, clipper and burr" (emphasis added).

Furthermore, the Injured Worker's attending orthopedic specialist, David D. Lin, M.D., submitted a narrative report, dated 08/08/2011, stating that, "It is my opinion, within a reasonable degree of medical probability, that the following procedures were performed on June 27, 2011 to specifically address the allowed left shoulder bursitis condition: "Extensive debridement, Bursectomy and Acromioplasty." Thus, Dr. Lin supports the fact that a significant portion of the surgery performed on 06/27/2011 was for treatment of the residuals of the allowed condition of left shoulder (subacromial) bursitis.

Therefore, this Staff Hearing Officer finds the opinion of David D. Lin, M.D., to be persuasive in regard to the Injured Worker's extent of disability resulting from the allowed condition in this claim.

Therefore, it is the finding of this Staff Hearing Officer that the Injured Worker was temporarily and totally disabled due to impairment resulting from the allowed condition of left shoulder bursitis, while awaiting approval for the surgery which took place on 06/27/2011, and a reasonable period of recovery thereafter.

Therefore, it is the order of this Staff Hearing Officer that temporary total disability compensation is hereby GRANTED for the period from 01/14/2011 through the date of 08/14/2011, and continuing thereafter upon submission of competent supporting medical proof of a temporary and total disability resulting from impairment due to the allowed condition in this claim.

This order is based upon the C-84 Physician's Disability Statements completed by David Lin, M.D., on 03/29/2011,

06/07/2011 and 06/26/2011, as well as the operative report of 06/27/2011 and Dr. Lin's narrative statement of 08/08/2011.

{¶31} 16. On September 1, 2011, another SHO mailed an order refusing Whirlpool's appeal from the SHO's order of August 9, 2011.

{¶32} 17. On September 9, 2011, Whirlpool moved for reconsideration of the SHO's order of August 9, 2011. In its memorandum in support, Whirlpool wrote:

The claimant was examined by Paul Hogya, M.D., and in reports dated May 31, 2011 and August 3, 2011, Dr. Hogya confirms bursitis was not the disabling condition. Dr. Hogya confirms the torn glenoid labrum was the reason for surgery. As pointed out by Dr. Hogya in his August 3, 2011 report, the claimant's operative report dated June 27, 2011 confirms the surgery was for conditions not allowed in this claim. In fact, the post operative diagnosis include[d] left shoulder impingement, degenerative labral tear and arthritis, post traumatic. None of these conditions are allowed in the claim and the torn glenoid labrum has been specifically disallowed. The condition bursitis is not even listed on the operative report as a diagnosis.

* * *

In the staff hearing officer's August 9, 2011 order in the present claim, he bases his decision to award temporary total compensation on the incorrect reasoning "this staff hearing officer notes that the allowed condition of left shoulder (subacromial) bursitis as another name used for the condition of shoulder impingement." This is medically not correct. As stated in a supplemental report dated August 23, 2011 [sic] from Paul Hogya, M.D., the medical condition shoulder impingement is not the same or synonymous with shoulder bursitis. As pointed out by Dr. Hogya, these conditions even have different ICD-9 codes highlighting the fact they are different conditions. Impingement refers to impingement of the supraspinatus tendon due to arthritic spurring and developmental downward curving/hooking of the acromion. Bursitis refers to focal inflammation of the bursa sac, in this case the subacromial bursa. Therefore, it is clear the staff hearing officer made mistakes of both law and fact in his order.

{¶33} 18. On October 12, 2011, the three-member commission, on a two-to-one vote, mailed an interlocutory order stating:

> It is the finding of the Industrial Commission that the Employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration, regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.
>
> Specifically, it is alleged that the Staff Hearing Officer made a clear mistake of law by granting temporary total disability compensation when the office notes of David Lin, M.D., are inconsistent with the C-84 forms. See **State ex rel. Genuine Parts Co. v. Indus. Comm.** 160 Ohio App.3d 99, 2005 Ohio 1447. In addition, it is alleged that the Staff Hearing Officer made a clear mistake of fact and law by finding the condition of "bursitis" is another name for the condition of "shoulder impingement" without any medical evidence to support such a finding.
>
> The order issued 09/01/2011 is vacated, set aside and held for naught.
>
> Based on these findings, the Industrial Commission directs that the Employer's request for reconsideration, filed 09/09/2011, is to be set for hearing to determine whether the alleged mistake of fact and mistake of law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
>
> In the interest of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issues. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under R.C. 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issues.

(Emphasis sic.)

{¶34} 19. On November 1, 2011, at Whirlpool's request, relator was examined by Dr. Hogya. In his four-page narrative report, dated November 14, 2011, Dr. Hogya wrote:

> In my medical opinion, the recognized left shoulder bursitis long ago resolved. As such, she remains at maximum medical improvement for that condition.

{¶35} 20. Following a January 5, 2012 hearing, the three-member commission, on a unanimous vote, issued an order that vacates the SHO's order of August 9, 2011 based on continuing jurisdiction.

{¶36} 21. In its January 5, 2012 order, the commission explains its continuing jurisdiction:

> [T]he employer has met its burden of proving that the Staff Hearing Officer order, issued 08/12/2011, contains a clear mistake of fact. Specifically, the Staff Hearing Officer found that the condition of "bursitis" was another name for the condition of "shoulder impingement" without any medical evidence to support such a finding. As such, the Staff Hearing Officer made a medical determination in contravention of State ex rel. yellow Freight System v. Indus. Comm., 81 Ohio St.3d 56, 58, 689 N.E.2d 30 (1997).

{¶37} In its January 5, 2012 order, the commission ruled upon Whirlpool's May 10, 2011 motion for clarification. The commission awarded TTD compensation "from 01/14/2011 through 08/14/2011 and to continue only through 11/13/2011 with submission of appropriate supporting medical evidence."

{¶38} Further, the commission denied TTD compensation as of November 14, 2011:

> The commission finds that the Injured Worker is not entitled to temporary total disability compensation as of 11/14/2011, based on the examination report from Dr. Hogya who opined that the allowed condition has resolved.

{¶39} 22. On January 29, 2013, relator, LaShawn Robertson, filed this mandamus action.

Conclusions of Law:

{¶40} Because the commission improperly exercised its continuing jurisdiction, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶41} In his order of August 9, 2011, the SHO found that "the allowed condition of left shoulder (subacromial) bursitis is another name used for the condition of shoulder impingement, which was one of the pre-operative and post-operative diagnoses for the surgery * * *."

{¶42} In its January 5, 2012 order exercising continuing jurisdiction, the commission identified the above quoted finding as a clear mistake of fact in the absence of any medical evidence to support the finding. That is, there is no report from a medical expert that directly states that shoulder bursitis is synonymous with shoulder impingement.

{¶43} The SHO's order of August 9, 2011 does not cite to medical evidence to support the finding that bursitis and shoulder impingement are the same. However, it is conceivable that the SHO premised the finding upon articles that relator obtained from the internet and submitted at the hearing for the SHO's consideration. The record contains three internet articles submitted by relator.

{¶44} Here, relator argues that the three-member commission erred in finding a clear mistake of fact based upon the stated absence of medical evidence when the internet articles support the SHO's finding that bursitis is the equivalent of shoulder impingement. That is, relator contends that the internet articles provide the necessary medical evidence directly linking bursitis to shoulder impingement and, on that basis, the commission's exercise of continuing jurisdiction was improper.

{¶45} In its order, the commission relied upon *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56 (1998), to support its holding that the SHO's order contains a clear mistake of fact. Here, both Whirlpool and the commission argue that *Yellow Freight* supports the commission's finding of a clear mistake of fact. In *Yellow Freight,* the court held that neither the commission nor its hearing officers have medical expertise. Thus, medical issues in a claim must be supported by medical

evidence submitted by medical experts who usually file a medical report that contains the medical evidence.

{¶46} In the magistrate's view, it is not necessary that this court determine whether the SHO could properly rely upon the internet articles to support a finding that bursitis is the equivalent of shoulder impingement when the finding was not key to the SHO's determination that the June 27, 2011 surgery was, at least in part, necessitated by the allowed bursitis condition.

{¶47} The SHO's finding that bursitis is the equivalent of shoulder impingement can be traced back to Whirlpool's argument presented in its memorandum in support of reconsideration. As earlier noted, Whirlpool then pointed out "[t]he condition bursitis is not even listed on the operative report as a diagnosis." Whirlpool then asserted that the SHO's August 9, 2011 order was premised upon "incorrect reasoning" because, as Whirlpool asserted, "shoulder impingement is not the same or synonymous with shoulder bursitis."

{¶48} However, in its memorandum in support of reconsideration, Whirlpool failed to point out that the operative report did in fact link the allowed bursitis to the surgery which involved "a complete bursectomy and acromioplasty."

{¶49} Whirlpool's argument as presented in its memorandum in support of reconsideration was premised upon the unspoken proposition that the word "bursitis" must be directly referenced in the operative report's listing of the post-operative diagnoses in order that the surgery be found related to the allowed left shoulder bursitis. Whirlpool's unspoken proposition is incorrect. There is no authority to support the proposition that the commission is limited to the post-operative diagnoses in determining whether the surgery was performed to treat the allowed bursitis condition.

{¶50} Given the above analysis, it is clear that the SHO's order of August 9, 2011 determining a causal connection between the surgery and the allowed bursitis condition does not depend upon a finding that the bursitis is the equivalent to shoulder impingement. That finding is largely irrelevant given the operative report's description of the operation which states that a complete bursectomy and acromioplasty were performed.

{¶51}  Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its January 5, 2012 order that purports to exercise continuing jurisdiction over the August 9, 2011 SHO's order, and to enter an order that reinstates the SHO's order of August 9, 2011.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).